BOARD OF EDUCATION OF PIKE-DELTA-YORK LOCAL SCHOOL DISTRICT, APPELLANT, v. FULTON COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF GORHAM FAYETTE LOCAL SCHOOL DISTRICT, APPELLANT, v. FULTON COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF BEAVERCREEK LOCAL SCHOOL DISTRICT, APPELLANT, v. GREENE COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF EVERGREEN LOCAL SCHOOL DISTRICT, APPELLANT, v. FULTON COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF SWANTON LOCAL SCHOOL DISTRICT, APPELLANT, v. FULTON COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF BROOKVILLE LOCAL SCHOOL DISTRICT ET AL., APPELLANTS, v. MONTGOMERY COUNTY BUDGET COMMISSION, APPELLEE.
BOARD OF EDUCATION OF JEFFERSON AREA LOCAL SCHOOL DISTRICT ET AL., APPELLANTS, v. ASHTABULA COUNTY BUDGET COMMISSION, APPELLEE.

(Nos. 74-192, 74-193, 74-197, 74-260, 74-261, 74-342 and 74-343—Decided March 5, 1975.)

*Means, Bichimer, Burkholder & Baker Co., L. P. A.,*
Mr. *Robert T. Baker,* Mr. *John C. Burkholder,* Mr. *Nicholas A. Pittner,* Mr. *Edgar L. Lindley* and Mr. *Jon A. Ziegler,* for appellants.

Mr. *Ronald W. Vettel*, prosecuting attorney, and *Mr. Neil R. Wilson*, for appellee Ashtabula County Budget Commission.

Mr. *Richard B. McQuade, Jr.*, prosecuting attorney, for appellee Fulton County Budget Commission.

Mr. *Nicholas A. Carrera*, prosecuting attorney, and *Ms. Nancy Drake Hammond*, for appellee Greene County Budget Commission.

Mr. *Lee C. Falke*, prosecuting attorney, and *Mr. Chris R. Van Schaik*, for appellee Montgomery County Budget Commission.

*Per Curiam.* An understanding of the factual background of these appeals requires a review of the changes in real property taxation procedures that have occurred in this state since January 22, 1964. On that date, this court decided *State, ex rel. Park Invest. Co.*, v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 195 N. E. 2d 908. Basing its opinion on that portion of Section 2, Article XII of the Ohio Constitution, which provides that "land and improvements thereon shall be taxed by uniform rule according to value," the majority in that case announced two fundamental principles: First, the majority defined the "true value" of real property as "That amount which should result from a sale of such property on the open market." (175 Ohio St., at page 412.) Second, the majority stated that the "assessed value" of real property, which is the percentage of actual value to which real property tax rates are actually applied, "must be relatively uniform not only throughout the state but also as to various classes of real property." (175 Ohio St., at page 413.)

The uniform valuation principles set forth in that original *Park Invest. Co.* case set the stage for a series of actions by the General Assembly and the Board of Tax Appeals, which actions resulted in a series of cases in this court.

In *State, ex rel. Park Invest. Co.*, v. *Bd. of Tax Appeals* (1968), 16 Ohio St. 2d 85, 242 N. E. 2d 887, this court held that the 1965 amendments to R. C. 5715.01 and 5715.24

placed upon the Board of Tax Appeals a specific duty to promulgate and enforce uniform rules for determining both the true value and the taxable value of realty in this state. In compliance with that mandate, the board proposed and conducted a public hearing on a rule which would have established the taxable value of real property at a stated percentage of true value in money.

Prior to adoption of this proposed rule the General Assembly passed, and the Governor approved, legislation which suspended until 1972 the power of the board to issue and enforce uniform valuation rules. (133 Ohio Laws 648, 649.) The legitimacy of that legislation was challenged in *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals* (1971), 26 Ohio St. 2d 161, 270 N. E. 2d 342, decided June 2, 1971. This court's position concerning the legislative delaying action was succinctly stated by Chief Justice O'Neill, at page 166:

"* * * Insofar as the provisions * * * [of the legislation] purport to delay action by the board to carry out its constitutional duties in performing its statutory mandatory supervisory duties, as announced in *State, ex rel. Park Invest. Co., v. Board of Tax Appeals, supra* (16 Ohio St. 2d 85), those provisions are in conflict with the Ohio Constitution, Section 2 of Article XII, and are, to that extent, invalid. It follows that the board is still bound to conform to our decision in *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals, supra* (16 Ohio St. 2d 85)."

On December 17, 1971, the Board of Tax Appeals replaced existing Rules BTA-5-01, BTA-5-06 and BTA-5-11 with new rules. New Rule BTA-5-01(B) began by stating that "the 'taxable value' of each parcel of real property for each year, beginning with tax year 1972, shall be 35% of the true value in money of said parcel as of tax lien date of that year." New Rule BTA-5-06, when considered in conjunction with existing Rule BTA-5-05, fixed the true value of real property at its current market value. New Rule BTA-5-11 specified that "these rules and regulations [the new rules] * * * together with the other valuation rules now in effect and not amended, shall be applied in valuing

real property for the tax year 1972, and thereafter * * *.''

The effect of the new rules was to require, in tax year 1972 and thereafter, statewide compliance with the uniform valuation principles required by Section 2, Article XII of the Ohio Constitution.

The 109th General Assembly, apparently concluding that such a requirement was not practicable, reacted by enacting Amended Substitute Senate Bill No. 455. (134 Ohio Laws 859.) R. C. 5715.01 of that Act directed that the board's uniform valuation rules be applied only in tax year 1972 and thereafter, and that they first be applied to a county in the year in which that county completed its sexennial reappraisal. Not every county completes its sexennial reappraisal in the same year; the staggering of such reappraisals requires a six-year cycle to reappraise the real property in every county in the state. Therefore, the legislative directive would stagger statewide implementation of the board's uniform valuation rules over a six-year cycle beginning in the tax year 1972. This procedure was upheld in *State, ex rel. Park Invest. Co.*, v. *Bd. of Tax Appeals* (1972), 32 Ohio St. 2d 28, 289 N. E. 2d 579.[1]

The present appeals revolve solely around tax year 1973. The relevant Board of Tax Appeals' rules, therefore, are those which were in effect for that tax year.[2] One such rule was Rule BTA-5-01(B), which provided in part:

''Once, each six years, the county auditor of each county, in conformity with the provisions of Section 5713.01 of the Revised Code, shall view and appraise each parcel of real property in his county and his appraisal shall reflect the true 100% value in money of each parcel appraised, and he shall place each parcel of real property on the tax

---

[1]This case also struck down as unconstitutional those portions of Amended Substitute Senate Bill No. 455 which purported to establish current use of real property as the basis for determining true value.

[2]This court's sanctioning of the legislative order that the Board of Tax Appeals stagger implementation of its uniform valuation rules has forced the board to rewrite its rules. In December 1973, the board repealed existing Rules BTA-5-01 through BTA-5-11 and adopted new Rules BTA-5-01 through BTA-5-13. These new rules became effective in tax year 1974 and hence do not affect these appeals.

duplicate at its 'taxable value' which is 35% of its true value in money.

"Each succeeding year, when a complete reappraisal is not required by Section 5713.01 or by an order of this Board of Tax Appeals or a court of competent jurisdiction, the county auditor * * * shall make a determination as to whether the true value in money of each parcel of real property in his county has either (1) increased or (2) decreased from the true value in money established thereon for the prior tax year. If he finds that there has been either an increase or decrease in value, he shall adjust his tax records to show the true value in money of each parcel as well as the 'taxable value' thereof, which 'taxable value' shall be 35% of the true value in money thereof as redetermined by the county auditor.''

Rule BTA-5-01(B) recognized that the annual redetermination of true value was to be accomplished by methods other than on-site reappraisals of every parcel of realty. One method suggested by the rule was utilization of the county's "common level of assessment of real property in the various classes as established by the Board of Tax Appeals for the calendar year immediately preceding the year of redetermination * * *.''

The common level of assessment is computed by the board from sales-assessment ratio studies. A sales-assessment ratio is simply the sales price of a specific parcel of realty divided into the taxable value of that parcel at the time of the sale. For example, if a parcel of realty has a 1972 taxable value of $3,000, and it is sold in 1972 for $10,000, the sales-assessment ratio for that property is $3,000/$10,000, or 30%. The compilation and permissible use of sales-assessment ratio studies is set forth in R. C. 5715.012, which provides, in part:

"* * * Such studies shall be based on the most recent representative sampling of open market arms' length sales by a willing seller to a willing buyer for a current like use within the class or classes of real property sampled by the board. Such studies and other information of the board may be used by the board as guidelines, where ap-

152

plicable, in the equalization of a class or classes of real property, but such studies or other information of the board shall not be applied by the board on a taxing district, county-wide or state-wide basis for the purpose of equalization unless the board first finds there are sufficient arms' length sales for a like use included in the sample in a class to provide an indication that said sales in the class are representative of all parcels in the class.''

The budget commissions before this court today, as appellees, are from four counties (Ashtabula, Fulton, Greene and Montgomery) which had undergone sexennial reappraisals in 1972. Therefore, in tax year 1973 the auditor in each of those counties had a duty under Rule BTA-5-01 (B) to redetermine the true value of each parcel of realty in his county. Changes in true value would, of course, require changes in taxable values.

Various statutes in R. C. Chapter 5715 provide the Board of Tax Appeals with a procedure to detect and correct noncompliance by county auditors with the board's uniform valuation rules. R. C. 5715.23 requires each county auditor annually to transmit to the board ''an abstract of the real property of each taxing district in his county, in which he shall set forth the aggregate amount and valuation of each class of real property in such county and in each taxing district therein as it appears on his tax list or the statements and returns on file in his office.''[8] The statutory abstract is a basic document utilized by the board in fulfilling its duty under R. C. 5715.24 to determine whether the real property in those counties which have completed a sexennial reappraisal in or after tax year 1972 has been valued according to the uniform rules. R. C. 5715.24 is also the source of the board's corrective power. The last part of that statute states:

'' * * * [I]f the board finds that the real property or

---

[8]This abstract, which will hereinafter be referred to as the "statutory abstract," sets forth taxable values under four general use classifications—agricultural, industrial, commercial and residential. In the tax years 1972 and 1973, the characteristics of each classification were described in Rule BTA-5-04(G).

any class thereof in any county, municipal corporation, or taxing district, as reported to it by the several county auditors * * * is not listed by uniform rule at taxable value, the board shall increase or decrease the aggregate value of the real property or any class thereof in any such county, township, municipal corporation, taxing district, or ward or division of a municipal corporation, by a per cent or amount which will cause such property to be assessed on the tax list at its taxable value so that every class of real property shall be listed and valued for taxation by an equal and uniform rule according to its taxable value.'' R. C. 5715.25 directs the board to notify the affected auditor of any corrective action ordered, and R. C. 5715.26 compels the auditor to comply which such an order.

The records in the present appeals clearly indicate the process by which the Board of Tax Appeals determined that the statutory abstracts originally submitted from Ashtabula, Fulton, Greene and Montgomery Counties for the tax year 1973 were not in compliance with the board's uniform valuation rules. By the summer of 1973, the board had compiled separate sales-assessment ratio studies applicable to tax year 1973 for the four counties.[4] Each study indicated that the 1973 taxable valuation of various classes of realty would have to be increased by a specified percentage over the 1972 taxable valuation.[5] In July 1973, an official in the Division of County Affairs (a division within the

_____

[4]The statutory abstract for any given tax year shows the taxable value of real property as of January 1 of that year. Rule BTA-5-01(B). Hence, by comparing 1972 sales prices of specific parcels of realty to the previously established 1972 taxable values of those parcels, the board was able to compile, by mid-1973, sales-assessment ratios applicable to the tax year 1973.

[5]Since the four counties had completed sexennial reappraisals in tax year 1972, it must be assumed that the taxable values shown on the abstracts finally approved by the board for that tax year reflected 35% of the January 1, 1972, true value of realty. The abstracts for the tax year 1973 also utilized 35% of true value as the method of determining taxable value. Therefore, the sole source of the increases in taxable values indicated by the studies for tax year 1973 was an increase in the true value of realty in the counties from January 1, 1972, to January 1, 1973.

Board of Tax Appeals) sent letters to the county auditors in the four counties, reminding each of his duty under Rule BTA-5-01(B) and informing him of the results of the sales-assessment ratio study compiled for that county. Each letter also stated that the Division of County Affairs would recommend approval by the board of the county's statutory abstract only if the abstract reflected the increases indicated by the sales-assessment ratio study.

The statutory abstracts subsequently filed by the four county auditors did not contain the suggested increases. Separate hearings were conducted by the board on the abstracts, and the board eventually issued journal entries and orders disapproving the abstracts and ordering the increases suggested by the Division of County Affairs.

Those orders precipitated the actions which engendered the present appeals.

After the board ordered the increases in tax values, the appellee-budget commissions proceeded to reduce the rates of voted school levies pursuant to the first sentence of R. C. 5713.11(B). which provides:

"Until January 1, 1978, when the people of any city, local, or exempted village school district have voted additional levies for any purpose in the year of reassessment or any year prior thereto, or when the Board of Tax Appeals has increased the aggregate value of the real property in the district in any year under Sections 5715.24 to 5715.26 of the Revised Code or when the aggregate value of the real property has been increased by the application of a uniform taxable value per cent of true value pursuant to the order of the Board of Tax Appeals and said additional levies are to be effective in the year of reassessment or thereafter or when the valuation is increased by or pursuant to an order of the Board of Tax Appeals to be effective in any year, and the levies are to be calculated on a total valuation of property higher than that of the year before reassessment or the year before the valuation is increased by or pursuant to such order, the rate of said additional levy shall be adjusted downward by the budget commission

in the same proportion in which the total valuation of property in the school district is increased by the reassessment or is increased by or pursuant to such order over the total valuation of the year preceding the reassessment or order.''

The appellant-boards of education, all of which were affected by the levy reductions, appealed the budget commissions' actions to the Board of Tax Appeals. The Board of Tax Appeals affirmed the budget commissions, and the boards of education have appealed to this court.[6]

The appellants predicate their appeals upon the last sentence in R. C. 5713.11(B), which provides:

'' * * * No reduction shall be made under this division for increases in valuation which occur after a sexennial reappraisal and which result from action taken by the auditor following his annual determination as to whether the true value in money of each parcel of real property in his county has changed from the value established for the preceding tax year in accordance with division (B) of Rule BTA-5-01 of the Board of Tax Appeals as such rule was in effect on the effective date of this section.''

The appellants argue that this segment of R. C. 5713.-11(B) indicates a legislative policy that school districts in counties subject to Rule BTA-5-01(B) receive the benefits of inflationary increases in real property values. This court can only give qualified approval to that argument. The last sentence of R. C. 5713.11(B) clearly and unambiguously prohibits school levy reductions if the increases in valuation flow from the county auditor's compliance with Rule BTA-5-01(B). However, the first sentence of R. C. 5713.11(B) just as clearly and unambiguously dictates school levy reductions if the increases in valuation flow from an order of the Board of Tax Appeals. The increases in valuation in the four counties involved in these appeals were the result of orders issued by the Board of Tax Ap-

---

[6]Numerous notices of appeal were filed before both the board and this court. Because the appeals present a common question of law, they were consolidated for argument and decision by this court.

peals. Therefore, the budget commissions were under a duty to reduce voted school levies.

This court recognizes that today's decision has the strange effect of allowing county auditors to instigate reductions in the rates of voted school levies by failing to comply with Rule BTA-5-01(B). Appellees have not advanced any rationale in support of this effect.[7] Nevertheless, this court does not sit as a superlegislature to amend Acts of the General Assembly. Courts do not have the authority to ignore, in the guise of statutory interpretation, the plain and unambiguous language in a statute. *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 55 N. E. 2d 413; *Cleveland Trust Co.* v. *Eaton* (1970), 21 Ohio St. 2d 129, 256 N. E. 2d 198; *State, ex rel. Wallace,* v. *Celina* (1972), 29 Ohio St. 2d 109, 279 N. E. 2d 866. The remedy desired by appellants from this court must be obtained from the source of their problem— the General Assembly.[8]

For the foregoing reasons, the decisions of the Board of Tax Appeals are affirmed.

*Decisions affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

[7] One possible reason underlying R. C. 5713.11(B) is a refusal on the part of the General Assembly to permit an increase in the amount of local property taxes to flow from a decision of a state agency.

[8] Senate Bill No. 538, which was introduced in the 110th General Assembly, but not enacted, would have rectified the problem presented in these appeals. It would have substituted the following language for the existing language found in the last sentence of R. C. 5713.11(B):

"* * * Notwithstanding the foregoing, after a county has undergone a sexennial reappraisal in the years 1972 through 1977 and the property therein has been assessed at a uniform taxable value per cent of true value as required by Rule BTA-5-01 as said rule was in effect on June 28, 1972, whether said property was so assessed pursuant to a Board of Tax Appeals order or otherwise, and the tax rates of voted additional levies have been adjusted pursuant to this section for the year in which such sexennial reappraisal occurred and pursuant to 5713.111 of the Revised Code, if applicable, there shall be no further reduction or adjustment of the tax rates of voted additional levies for city, local and exempted village school districts due to any increase in valuation in subsequent years, regardless of cause."