OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.


Cablevision of the Midwest, Inc., Appellee and Cross-Appellant, v. Gross et al., Appellants and Cross-Appellees.
[Cite as Cablevision of the Midwest, Inc. v. Gross (1994), Ohio St.3d    .]
Public utilities -- Cable television system is a communications business under R.C. 4931.11.
A cable television system is a communications business under R.C. 4931.11.
(No. 92-1820 -- Submitted November 17, 1993 -- Decided October 19, 1994.)
Appeal and Cross-Appeal from the Court of Appeals for Cuyahoga County, No. 60703.

Appellant/cross-appellee Gary Gross is the owner of a residential apartment complex consisting of twenty-seven multiunit buildings in North Royalton, Ohio, known as Walnut Hill. His brother, appellant/cross-appellee Harley Gross, owns a similar development, Deer Creek, also located in North Royalton, which comprises twenty-four multiunit buildings. Gary and Harley Gross each have a beneficial interest in the properties. Both properties are managed by a partnership, I.& M.J. Gross Company.

Appellee/cross-appellant Cablevision of the Midwest, Inc. ("Cablevision") is a cable television operator which currently holds a nonexclusive cable television franchise from the city of North Royalton.

On September 16, 1981, North Royalton granted to Cablevision's predecessor in interest a twelve-year nonexclusive franchise "to construct, operate and maintain a cable television system in the streets of North Royalton."

In December 1984, Gary Gross and Cablevision's predecessor entered into an agreement pursuant to which Gross granted Cablevision's predecessor the exclusive right to operate its cable system at Walnut Hill in exchange for ten percent of the subscription income. At the end of the term of the contract the underground cables and the cables installed in the walls at Walnut Hill were to become the property of Gross.

On August 26, 1988, I.& M.J. Gross Company entered into an agreement with Philips Consumer Electronics Company ("Philips")

to install a satellite master antenna television system ("SMATV") at Walnut Hill that would provide cable television service to the tenants at Walnut Hill and Deer Creek. Pursuant to the agreement, the wiring and equipment installed underground and in the walls are the property of I.& M.J. Gross Company. In return for being the exclusive provider of cable services to both Deer Creek and Walnut Hill, Philips agreed to provide the Grosses with a percentage of the revenues generated by the SMATV.

With regard to the delivery of cable services to Walnut Hill, the exclusive agreement with Philips would necessarily have conflicted with the previous exclusive contract between Gary Gross and Cablevision, the successor party in interest to the 1988 contract. On August 29, 1988, Gross sent a letter to Cablevision to terminate the earlier agreement. Because there was no existing contract between Cablevision and the Grosses concerning cable services at Deer Creek, the letter only implicated the contract between Cablevision and Walnut Hill.

Cablevision instituted this action for declaratory judgment in the Cuyahoga County Court of Common Pleas, seeking (by a later amended complaint) a declaration that it was authorized by law to appropriate a limited interest in the Walnut Hill and Deer Creek apartments. Cablevision based its claim on three different laws: North Royalton Ordinance No. 1981-88, R.C. 4931.04 and 4931.11 ("the communications statutes"), and the federal Cable Communications Policy Act of 1984, Section 521 et seq., Title 47, U.S. Code.

Cablevision filed for a partial summary judgment with regard to Ordinance No. 1981-88 and the communications statutes. The Grosses filed a motion for summary judgment on all issues. The trial court denied Cablevision's motion for partial summary judgment and granted the Grosses' motion for summary judgment.

On Cablevision's appeal to the Eighth District Court of Appeals, the judgment of the trial court was affirmed in part and reversed in part. The court of appeals concluded that Cablevision was not a "communications business" upon which R.C. Chapter 4931 conferred eminent domain powers. In addition, the court determined that if it were a communications business, R.C. Chapter 4931 and the eminent domain powers arising therefrom would be preempted by the Cable Communications Policy Act of 1984, according to Sections 541(c) and 556(c), Title 47, U.S. Code. However, the court of appeals also concluded that North Royalton, pursuant to Ordinance No. 1981-88, Section 14, had validly delegated its municipal power of eminent domain to Cablevision to permit a limited access to the properties owned by Gary and Harley Gross.

The cause is now before this court pursuant to an allowance of a motion and cross-motion to certify the record.

Thrasher, Dinsmore & Dolan, Dale H. Markowitz and Paul J. Dolan, for appellee/cross-appellant.
Rubin Guttman Co., L.P.A., and Rubin Guttman, for appellants/cross-appellees.

Moyer, C.J. This case presents the court with two interrelated issues. First, we must decide whether Cablevision

is a communications business under R.C. 4931.11, thereby entitling it to exercise the power of eminent domain described in R.C. 4931.04.  Second, in the event we answer the first issue in the negative, we must decide whether the city of North Royalton, which possesses the power of eminent domain as an Ohio municipality, validly delegated that power to Cablevision, a cable television franchisee, for the purpose of providing cable television service to residents of the municipality. Because we hold that Cablevision is a communications business under R.C. 4931.11, we need not address the applicability of the North Royalton ordinance.

It is the responsibility of courts to enforce the literal language of a statute whenever possible.  Pike-Delta-York Local School Dist. Bd. of Edn. v. Fulton Cty. Budget Comm. (1975), 41 Ohio St.2d 147, 70 O.O.2d 300, 324 N.E.2d 566.  A court's role is to interpret, not legislate.  Seeley v. Expert, Inc. (1971), 26 Ohio St.2d 61, 50 O.O.2d 120, 269 N.E.2d 121.  Absent ambiguity, the court must give effect to the plain meaning of a statute even when a court believes that the statute results in an unfavorable outcome.  Id.; R.C. 1.49.  In this context we address R.C. 4931.11.

R.C. 4931.11 provides:

"Any company organized at any time to transact a telegraph, telephone, or communications business may construct, reconstruct, own, use, lease, operate, maintain, and improve communications systems for the transmission of voices, sounds, writings, signs, signals, pictures, visions, images, or other forms of intelligence, as public utility services, by means of wire, cable, radio, radio relay, or other facilities, methods, or media.  Any such company has the powers and is subject to the restrictions prescribed in sections 4931.01 to 4931.23, inclusive, of the Revised Code, for telegraph or telephone companies."

R.C. Chapter 4931 does not define "communications business."  However, the inclusion of the term in the statute suggests an intent of the General Assembly to broaden the reach of R.C. 4931.11 to forms of communication beyond a telegraph or telephone business and the technology available at the time the statute was enacted.  The express terms of the statute include within a "communications business" those entities that "operate *** systems for the transmission of voices, sounds, *** signals, pictures, visions, *** or other forms of intelligence *** by means of *** cable ***."  The clear and unambiguous language used by the General Assembly produces the conclusion that a cable television company is included within the meaning of "communications business" under R.C. 4931.11.  When the language of a statute is unambiguous, no construction is necessary or proper.

This conclusion is further buttressed by the definition of a "cable television system" found in R.C. 505.90, which provides:

"As used in sections 505.90 to 505.92 of the Revised Code:

"(A) 'Cable television system' means a nonbroadcast facility consisting of a set of transmission paths and associated signal generation, reception, and control equipment, under common ownership and control, that distributes or is designed to distribute to subscribers the signals of one or

more television broadcast stations ***."

These statutes, R.C. 4931.11 and 505.90, describe a cable television system as an entity that transmits or distributes signals. While the scope of R.C. 505.90 is expressly limited to R.C. 505.90 to 505.92, its language is illustrative of the General Assembly's use of language when describing cable television systems.

It is argued that cable television systems should not have the broad power of eminent domain described in R.C. 4931.04.1 However, we should not ignore the plain language of the statute. The method of transmission employed by a cable television system is expressly mentioned in R.C. 4931.11. Furthermore, the General Assembly included the broad term "communications business" in the statute and then left it undefined. A reasonable use of such broad language would be to reflect the General Assembly's belief that communications technology was subject to continued advancement and that the statute should be so broad as to include such advancement.

The question of whether a municipality's right to award exclusive local franchises under the Cable Communications Policy Act of 1984, Section 521 et seq., Title 47, U.S. Code, preempts the statutory exercise of eminent domain by communications businesses is not before us. What is at issue is whether Section 541(c), Title 47, U.S. Code2 preempts a state from deeming a cable television company to be a communications business. This section prohibits the regulation of a cable system as a public utility. However, R.C. 4931.11 uses the term "public utility" in a descriptive and not a regulatory sense. Nowhere in R.C. Chapter 4931 does the General Assembly require a cable company to be regulated as a public utility. The federal statute is directed at regulation, not terminology. We have previously held that a private company may be a communications company without falling under the regulatory control of the Public Utilities Commission. Radio Relay Corp. v. Pub. Util. Comm. (1976), 45 Ohio St.2d 121, 74 O.O.2d 248, 341 N.E.2d 826. Therefore, Section 541(c), Title 47, U.S. Code does not bar the conclusion that Cablevision is a communications business under R.C. 4931.11.

The issue before us relates to eminent domain, not the regulation of subscriber rates or service. We will not decide the question of whether a municipality's authority to grant local franchises conflicts with the statewide power of eminent domain conferred by R.C. Chapter 4931 until that issue is clearly presented.

For the foregoing reasons, the judgment of the court of appeals is affirmed, but for the reasons stated in this opinion.

Judgment affirmed.


A.W. Sweeney, Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.

FOOTNOTES:

1 R.C. 4931.04 provides:

"A telegraph company may enter upon any land held by an individual or a corporation, whether such land was acquired by purchase, appropriation, or by virtue of any provision in its charter, for the purpose of making preliminary examinations and

surveys, with a view to the location and construction of telegraph lines, and may appropriate so much of such land in accordance with sections 163.01 to 163.22, inclusive, of the Revised Code, as it deems necessary for the construction and maintenance of its telegraph poles, cables, conduits, piers, abutments, wires, and other necessary fixtures, stations, and the right of way in, through, over, across, and under such lands and adjacent lands, sufficient to enable it to construct and repair its lines."

2 Section 541(c), Title 47, U.S. Code provides:

"Any cable system shall not be subject to regulation as a common carrier or utility by reason of providing any cable service."

Pfeifer, J., dissenting. The majority properly concedes that R.C. Chapter 4931 does not define "communications business." However, the majority improperly goes on to include cable television companies within that general term. Pursuant to ejusdem generis, a rule of statutory construction, "[w]here general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611, 613.

Thus, since telephone and telegraph companies are specifically mentioned in the statute, only a company in the same general class as telephone and telegraph companies should be considered a "communications business." Also, since the broad power associated with eminent domain is being conferred on "communications businesses," we ought to be doubly certain that a particular company is of the same class as others who have that power.

We cannot be certain what cable television may become and it is not the duty of this court to be the herald of the "hi-tech" future. At this point, cable television is of a different class from telephone and telegraph communications. Telephone and telegraph lines are essential in order for Ohioans to communicate with each other and with people outside Ohio. It is that notion of public necessity that underlies the power of eminent domain. While I may "want my MTV"(as the familiar chorus goes), I do not have to have it. At this point, cable television is essentially an entertainment delivery system between the cable company and its customer. Cable television is not a necessity, and it does not facilitate direct communication between Ohioans.

The majority points to Radio Relay Corp. v. Pub. Util. Comm. (1976), 45 Ohio St. 2d 121, 74 O.O.2d 248, 341 N.E.2d 826, for the proposition that a private company may be a communications company without being a public utility. That is accurate, but Radio Relay was trying to escape PUCO regulatory control, not seeking the power of eminent domain. What Cablevision seeks are the powers of a public utility without the burdens involved therewith. The majority has granted Cablevision the best of both worlds. It is conceivable that Cablevision will have the power to appropriate the property of other businesses that are regulated. What will keep Cablevision from one day appropriating Ohio Bell's excess fiber optics lines by way of the same eminent domain power that allows Cablevision to string cable lines over the property of

an unwilling owner?

Protecting the broad, core freedoms of the United States and Ohio Constitutions in a modern world unimagined by the founding fathers is within this court's function.  Section 19, Article I of the Ohio Constitution states that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare."  The Fifth Amendment to the federal Constitution also states that private property shall not "be taken for public use, without just compensation."

The power of eminent domain should be slow to expand.  The majority demeans our tradition of the inviolability of private property by elevating cable television to the level of the "public welfare."