THE STATE EX REL. SAUNDERS *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as *State ex rel. Saunders v. Indus. Comm.,*
101 Ohio St.3d 125, 2004-Ohio-339.]

(No. 2003–0629—Submitted November 3, 2003—Decided February 11, 2004.)

**Per Curiam.**

{¶ 1} The workers' compensation claim of relator-claimant, William Saunders, was originally allowed for a sprained right shoulder. He later sought additional allowance of two other shoulder conditions. That request eventually resulted in a lawsuit in the Lucas County Common Pleas Court.

{¶ 2} While that litigation was pending, respondent Industrial Commission of Ohio considered claimant's application for determination of percentage of permanent partial disability ("PPD"). All three medical reports before the commission evaluated claimant's as yet nonallowed conditions and his allowed injury but did not attribute a separate disability percentage to claimant's allowed injury. Claimant's application was denied:

{¶ 3} "[T]he conditions of right shoulder impingement and aggravation of preexisting osteoarthritis right shoulder are pending allowance in Common Pleas Court. Therefore, pursuant to Industrial Commission Policy Memo E.7 no permanent partial impairment percentage may be currently awarded for those conditions.

{¶ 4} "The Staff Hearing Officer further finds insufficient break-down of the medical impairments to ascertain what percentage of impairment is related to the right shoulder/arm strain/sprain.

{¶ 5} "Therefore, no percentage is awarded at this time."

{¶ 6} Claimant's petition in mandamus is now before this court, asking us to find that Memo E7 is invalid and to issue a writ of mandamus ordering the commission to vacate the above order.

{¶ 7} R.C. 4121.31 requires the commission to adopt rules concerning procedures for decision making:

{¶ 8} "(A) The administrator of workers' compensation and the industrial commission jointly shall adopt rules covering the following general topics with respect to this chapter and Chapter 4123. of the Revised Code:

{¶ 9} "(1) Rules that set forth any general policy and the principal operating procedures of the bureau of workers' compensation or commission, including but not limited to:

{¶ 10} "* * * '(b) Procedures for decision-making[.]' "

{¶ 11} R.C. 4121.32 requires the commission to supplement its rules with an operating manual:

{¶ 12} "(A) The rules covering operating procedure and criteria for decision-making that the administrator of workers' compensation and the industrial commission are required to adopt pursuant to section 4121.31 of the Revised Code shall be supplemented with operating manuals setting forth the procedural steps in detail for performing each of the assigned tasks of each section of the bureau of workers' compensation and commission.  * * *

{¶ 13} "* * *

{¶ 14} "(C) The bureau and commission jointly shall develop, adopt, and use a policy manual setting forth the guidelines and bases for decision-making for any decision which is the responsibility of the bureau, district hearing officers, staff hearing officers, or the commission.  Guidelines shall be set forth in the policy manual by the bureau and commission to the extent of their respective jurisdictions for deciding at least the following specific matters:

{¶ 15} "* * *

{¶ 16} "(8) Determining the percentage of permanent partial disability * * *."

{¶ 17} Consistent with these directives, the commission developed a Hearing–Officer Manual.  It included Memo E7, the subject of this litigation, which states:

{¶ 18} "The Industrial Commission shall not process a C–92 Application [for determination of percentage of PPD] during the pendency of the original allowance in Court under O.R.C. 4123.512.  If a question of an additional allowance is in Court, there is jurisdiction to hear a C–92 as it relates to the original conditions allowed in the claim that are not being contested in Court."

{¶ 19} Memo E7 is based on two things.  First is the established case law that nonallowed conditions can never factor into a compensation award.  *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 619 N.E.2d 1018.  Second is R.C. 4123.512, which states:

{¶ 20} "(H) An appeal from an order issued under division (E) of section 4123.511 of the Revised Code or any action filed in court in a case in which an award of compensation has been made shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of *total* disability during the pendency of the appeal."  (Emphasis added.)

{¶ 21} Because the word "disability" is modified by the word "total," we read the statute as authorizing the commission to stay the payment of *partial* disability compensation during pending litigation.

{¶ 22} The claimant at bar seeks PPD compensation.  The three medical reports before the commission evaluated claimant's as yet nonallowed conditions together with his allowed injury, and did not designate the percentage of

disability related to claimant's allowed injury alone. This, in and of itself, supported the commission's denial of compensation under *Waddle*. The staff hearing officer's order, however, also relied on Memo E7 and, in so doing, generated this controversy.

{¶ 23} Claimant attacks Memo E7, asserting that it was not promulgated in accordance with R.C. Chapter 119 and is therefore invalid. The commission and respondent employer, Johnson Controls, Inc., argue that Memo E7 falls outside R.C. Chapter 119's purview. We agree with respondents.

{¶ 24} R.C. Chapter 119 establishes the procedure for the adoption, amendment, or rescission of rules. The procedure is intended to permit "a full and fair analysis of the impact and validity of a proposed rule," *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 93, 12 OBR 79, 465 N.E.2d 450, by " 'provid[ing] an opportunity for opponents of a proposed regulation to express their views as to the wisdom of the proposal and to present evidence with respect to its illegality.' " *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 24, 567 N.E.2d 993, quoting *Ohio Grape Growers, Vintners & Bottlers Assn. v. Bd. of Liquor Control* (1961), 115 Ohio App. 243, 245, 20 O.O.2d 320, 184 N.E.2d 767.

{¶ 25} R.C. Chapter 119 governs "rules," which are statutorily defined as "any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule." R.C. 119.01(C). It does not, however, include "any internal management rule of an agency unless the internal management rule affects private rights." Id.

{¶ 26} Over the years, we have reiterated that what an agency labels a document is not conclusive. "It is the effect of the [document], not how the [agency] chooses to characterize it, that is important." *Ohio Nurses Assn., Inc. v. Ohio State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 76, 540 N.E.2d 1354.

{¶ 27} The pivotal issue in determining the effect of a document is whether it enlarges the scope of the rule or statute from which it derives rather than simply interprets it. *Ohio Nurses*; *OPUS III–VII Corp. v. Ohio Bd. of Pharmacy* (1996), 109 Ohio App.3d 102, 113, 671 N.E.2d 1087. If the former, it must be promulgated pursuant to R.C. Chapter 119. If the latter, it is exempt from those requirements.

{¶ 28} In *Ohio Nurses*, for example, the State Nursing Board issued a "position paper" that greatly expanded the authority of licensed practical nurses ("LPNs") to administer intravenous fluids or "IVs." Concerned that LPNs would encroach upon duties previously reserved for registered nurses, the Ohio Nurses Association, Inc., sued.

{¶ 29} We found that the position paper was a rule subject to the provisions of R.C. Chapter 119 because it expanded the scope of LPN practice and regulated those LPNs qualified to start IVs by requiring additional course work. We wrote:

{¶ 30} "It is the effect of the position paper, not how the board chooses to characterize it, that is important. Regardless of whether the board characterizes its position paper as merely advisory, a clear reading thereof reveals that the paper does not purport merely to interpret an extant statute or rule, but rather to establish a new rule, standard or regulation regarding LPN practice." Id. at 76, 540 N.E.2d 1354.

{¶ 31} We concluded:

{¶ 32} "By failing to rule-file the instant position paper, the board has effectively denied members of the nursing profession, as well as other interested members of the public, a full and fair analysis of the impact and validity of the *new* standards of LPN practice set forth therein and its effects on the public health and safety." (Emphasis added.) Id.

{¶ 33} Documents that explain rather than expand, fall outside R.C. Chapter 119. In *Princeton City School Dist. Bd. of Edn. v. Ohio State Bd. of Edn.* (1994), 96 Ohio App.3d 558, 645 N.E.2d 773, controversy arose around the Educational Management Information System ("EMIS"), a legislatively created computer network for public schools. R.C. 3301.0714. EMIS collected information about student participation, performance, enrollment, and demographics. The statute directed the State Board of Education to develop rules for EMIS *and* to develop "guidelines" for the establishment and maintenance of the system.

{¶ 34} Several local school districts sued, arguing that the General Assembly could not allow an administrative body to create guidelines without following the rulemaking process outlined in R.C. Chapter 119. The Court of Appeals for Hamilton County disagreed. After analyzing the substance of the guidelines, the court wrote:

{¶ 35} "The guidelines * * * are a kind of instruction manual showing methods and alternatives to identify, compile, collect and report the data. * * * Because these guidelines merely control the procedure by which the duties in the statute and rule must be performed, they are distinct from the rules in cases such as *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 91, 12 OBR 79, 80–81, 465 N.E.2d 450, 452; *McLean Trucking Co. v. Lindley* (1982), 70 Ohio St.2d 106, 113, 24 O.O.3d 187, 191–192, 435 N.E.2d 414, 419; *Ohio Nurses Assn., Inc. v. State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 76, 540 N.E.2d 1354, 1356–1357; [and] *Ohio Dental Hygienists Assn. v. State Dental Bd.* (1986), 21 Ohio St.3d 21, 25, 21 OBR 282, 285–286, 487 N.E.2d 301, 304." Id. at 563–564, 645 N.E.2d 773.

{¶ 36} R.C. Chapter 119 was also found to be inapplicable by the Court of Appeals for Franklin County in *OPUS III–VII Corp.*, supra, 109 Ohio App.3d 102, 671 N.E.2d 1087. Underlying the controversy in that case was Ohio Adm.Code 4729–9–04, which governs the return of "unopened" medication and its redispensing by pharmacies. The code did not define "unopened," but OPUS III–VII Corporation's packaging made it impossible to ascertain whether the container had been opened. Consequently, the pharmacy board concluded that medication dispensed in OPUS containers could not be returned and redispensed.

{¶ 37} OPUS objected, arguing that the board had implicitly added the requirement that packaging be "tamper-evident," and, in so doing, created a new rule without complying with R.C. Chapter 119. The trial court disagreed, as did the court of appeals. The latter cited *Ohio Nurses*, supra, and observed:

{¶ 38} "[T]he board may advise those affected of the meaning that it attaches to one of its rules. However, in so doing, an administrative agency may not expand the scope of the rule without complying with the rulemaking provisions of R.C. Chapter 119." Id., 109 Ohio App.3d at 112, 671 N.E.2d 1087.

{¶ 39} It then distinguished the case before it from *Ohio Nurses*:

{¶ 40} "In contrast, the [pharmacy] board's determination in the instant case merely interpreted the language used in an existing rule, but did not establish a new rule, standard or regulation. OPUS argues that the board's determination somehow defines the rule in a manner inconsistent with the express language of the rule. As noted previously, the board is entitled to due deference from the court in its interpretation of the technical requirements of the pharmacy profession. We cannot say that the board's interpretation of the term 'unopened' to mean that a pharmacist must be able to look at a container and see whether it had been opened is inconsistent with the express language of the rule." Id. at 113, 671 N.E.2d 1087.

{¶ 41} The court of appeals elaborated on the tenet that agencies should be given deference, citing two cases from this court. First, relying on *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 25 OBR 141, 495 N.E.2d 370, it stated that courts "must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise in the particular subject area and to which the General Assembly has delegated the responsibility of implementing the legislative command." *OPUS III–VII Corp.*, 109 Ohio App.3d at 112–113, 671 N.E.2d 1087. Equally important, "such deference is afforded to an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself." Id. at 113, 671 N.E.2d 1087, citing *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 281 N.E.2d 1.

{¶ 42} Applying all of these principles in this case, we find that Memo E7 is an interpretation exempt from R.C. Chapter 119 and not a rule falling thereunder. Unlike the position paper at issue in *Ohio Nurses*, Memo E7 does not expand upon the statute and case law that it is based on. It instead follows R.C. 4123.512 and *Waddle* by (1) directing hearing officers not to include nonallowed conditions in a PPD assessment and (2) to, if possible, assess the percentage of PPD for the allowed claims. It is important to remember that it was *not* Memo E7 that prevented claimant's PPD award but claimant's failure to submit medical evidence that attributed a percentage of disability exclusively to claimant's allowed injury.

{¶ 43} For these reasons, we find Memo E7 to be exempt from R.C. Chapter 119's requirements.

{¶ 44} A writ of mandamus is accordingly denied.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Michael D. Dorf, for relator.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for respondent Industrial Commission.

Bugbee & Conkle, L.L.P., Gregory B. Denny and Mark S. Barnes, for respondent Johnson Controls, Inc.