The STATE of Ohio, Plaintiff,

v.

STALEY, Defendant.

2006-Ohio-7274.]

Franklin County Municipal Court.

No. 2006 TRC 113017.

Decided Dec. 6, 2006.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Andrew Kielczewski and Jeff Bennington, Assistant City Attorneys, for plaintiff.

Eric Yavitch and Lisa Tome, for defendant.

---

DORRIAN, Judge.

{¶ 1} A motion hearing was held October 4, 2006. The state of Ohio was represented by assistant prosecuting attorneys Andrew Kielczewski and Jeff Bennington. Defendant was represented by attorneys Eric Yavitch and Lisa Tome, who was standing in for attorney William Meeks. Sworn testimony was taken. A court reporter was present.

### Findings of Fact

{¶ 2} Defendant stipulates that all regulations pertaining to the Ohio Administrative Code, the administration of the blood-alcohol-content ("BAC") test, the required instrument checks, the solution, and the results were followed, with the exception of Ohio Adm.Code 3701–53–07(D) and 3701–53–09(B). Defendant stipulates that the permits were issued properly and were in effect at the time of testing. As to these stipulations only, defendant withdraws his motion to suppress.

{¶ 3} Dean Ward, Chief of the Bureau of Alcohol and Drug Testing ("bureau") at the Ohio Department of Health ("ODH"), testified that prior to employment at ODH, he was a Cincinnati police officer for 26 years and, in that capacity, he served as the chemical-testing coordinator. He has been a consultant with ODH since 1993. He became the chief of the bureau in September 2000. In this capacity, he is the chief administrative officer on matters relating to rule review, rule making, training on evidential breath testing, and test permits.

{¶ 4} ODH issues three different permits for eight different evidentiary breath-testing devices. The device identified as No. 1 is for the Intoxilizer 8000. The permit identified as No. 2 is for the Intoxilizer 5000, the 68, the 66, and the 68 EN. Finally, the permit identified as No. 6 is for the BAC DataMaster Standard, Option K and cdm. ODH no longer issues permits for the Alco–Sensor RBTIII. State's Exhibit 3 is a copy of Ohio Adm.Code 3701–53–02, which lists the ODH-approved evidential breath testing devices.

{¶ 5} Trooper Tajuana Young administered the BAC test to defendant on February 5, 2006, using a BAC DataMaster cdm (a compact DataMaster). State's Exhibit 2 shows that Trooper Young had a valid permit from ODH allowing her to operate the BAC DataMaster. The permit was numbered 78397–S–6, the "S" indicating that she is a senior operator, and the "6" indicating she may operate the BAC DataMaster Standard, Option K, or cdm machines.

{¶ 6} The BAC DataMaster cdm operates a little differently from the DataMaster Standard and Option K in that it asks fewer and different questions; however the core questions are still the same. The big printer is removed from the left side of the DataMaster cdm. The cdm is downsized, and the length of the subject cell in the cdm is reduced. An additional filter was added to the DataMaster cdm for interference. The DataMaster cdm requires less volume of breath to analyze, and the optical bench is different. Ward testified that the cdm is scientifically different but operationally the same.

{¶ 7} The checklist and training models for the Standard and cdm are the same. The same proficiency test is given to applicants seeking authorization to operate the Standard, Option K, and cdm machines. ODH approved the same

subject test form for the Standard, Option K, and cdm. ODH also approved the same instrument check form for the Standard, Option K, and cdm. Different permits are issued to authorize operation of the Intoxilizer and the DataMaster machines because they operate differently, analyze samples differently, and require different training. However on cross-examination, Ward's testimony indicated that the operation is similar. Defendant's Exhibits A, B, C, D, E, and F show that the permit review questions for the BAC DataMaster and the Intoxilizer 5000 are very similar, as are the subject test forms. Ward testified, however, that there is a difference in nomenclature, location of input/output, method to plumb, and training.

{¶ 8} ODH consulted with the manufacturer of the DataMaster machines, National Patent Analytical Systems, Inc., to determine whether additional training or a different checklist was needed for the cdm or whether a new permit was required. After the consultation, ODH determined that no additional training or checklist was required and that a new permit was not required.

{¶ 9} Defendant's Exhibit G is the June 2006 National Highway Traffic Safety Administration Conforming Products List for Devices to Measure Alcohol, also known as the CPL. The 2004 CPL was in effect in February 2006 when Trooper Young used the DataMaster cdm to administer the BAC test on defendant. The CPL in effect on February 2006 lists the DataMaster Standard in a separate category from the DataMaster cdm. However, the CPL currently in effect lists the DataMaster cdm as a subcategory of the DataMaster Standard. Both versions of the CPL list the Intoxilizer 5000 models as subcategories of the Intoxilizer.

{¶ 10} ODH approved the DataMaster cdm for use in Ohio after a three-day evaluation. The cdm was tested at various target values together with all the other approved devices to see whether there was a variance. It was then subjected to human testing with the other devices. It was not compared to blood tests or used to determine true blood-alcohol content.

## Conclusion of Law

{¶ 11} The issue presented is whether the permit issued by ODH authorizing operation of the BAC DataMaster authorized operation of the BAC DataMaster cdm as well.

{¶ 12} The Ohio General Assembly has charged the director of the department of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath." R.C. 3701.143. The regulations set forth at Ohio Adm.Code 3701–53–01 et seq. constitute the approved techniques or methods for chemically analyzing a person's breath.

Breath samples must be analyzed for alcohol content "in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." R.C. 4511.19(D)(1). *State v. Reedy*, Franklin App. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861.

{¶ 13} "In determining whether the state complied with Ohio Adm.Code 3701–53–02, we are aided by rules of statutory construction, which apply to administrative rules and regulations having the effect of legislative enactment. See, e.g., *State ex rel. R. Bauer & Sons Roofing & Siding, Inc. v. Indus. Comm.* (1998), 84 Ohio St.3d 62, 66 [701 N.E.2d 995]; *State ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 496–497 [37 O.O. 197, 79 N.E.2d 553]. 'An administrative rule, " * * * issued pursuant to statutory authority, has the force and effect of law unless it is unreasonable or is in clear conflict with statutory enactment governing the same subject matter." ' *Youngstown Sheet & Tube Co. v. Lindley* (1988), 38 Ohio St.3d 232, 234 [527 N.E.2d 828], quoting *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 125 [36 O.O. 471, 77 N.E.2d 921]. We are required to give considerable deference to an administrative agency's interpretation of its own rules and regulations. *State v. Anderson*, Franklin App. No. 04AP–1171, 2005-Ohio-5243 [2005 WL 2403961], at ¶ 14, citing *City of Columbus v. Childs*, Franklin App. No. 04AP–911, 2005-Ohio-3683 [2005 WL 1693624]." *State v. Reedy*, 2006-Ohio-1212, 2006 WL 648861, at ¶ 10.

{¶ 14} "The foremost consideration in determining the meaning of a statute is legislative intent. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206 [811 N.E.2d 68], ¶ 34. 'To determine the legislative intent, we first review the statutory language[,] * * * [according] the words used their usual, normal, or customary meaning.' *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 184 [724 N.E.2d 771]. When plain and unambiguous statutory language conveys a clear and definite meaning, there is no need for courts to apply rules of statutory interpretation; the court must give effect to the words used. *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392 [750 N.E.2d 583]; *State v. Elam* (1994), 68 Ohio St.3d 585, 587 [629 N.E.2d 442]. Courts may not ignore plain and unambiguous statutory language. *Bd. of Edn. v. Fulton County Budget Comm.* (1975), 41 Ohio St.2d 147, 156 [70 O.O.2d 300, 324 N.E.2d 566]" *Reedy* at ¶ 12.

{¶ 15} The Tenth District Court of Appeals, in *Reedy*, has found that the regulatory language, which defines instruments approved for evidential breath testing, is ambiguous. It further found Ohio Adm.Code 3701–53–02 does not define the term BAC DataMaster and that the term is subject to different reasonable interpretations. "When statutory language is subject to more than

one reasonable interpretation, it is ambiguous and the court must give effect to the legislature's intent when construing such language. *Family Medicine Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177, at ¶ 8–9. A court may look to a host of factors, including the purpose of the statute, to determine legislative intent." *Reedy* at ¶ 13. The Tenth District Court found that the purpose of the regulations regarding breath testing is to ensure the most accurate and reliable test results. Although much evidence was presented for this court's consideration, no evidence was presented that would lead this court to believe that ODH's issuance of a single permit authorizing operation of the DataMaster Standard and the DataMaster cdm contradicts the purpose of ensuring the most accurate and reliable BAC test result.

{¶ 16} With regard to Ohio Adm.Code 3701–53–07(D) and 3701–53–09(B), the court notes again that "[c]ourts must give due deference ' "to an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself." ' " *Reedy* at ¶ 24, quoting *State ex rel. Saunders v. Indus. Comm.*, 101 Ohio St.3d 125, 2004-Ohio-339, 802 N.E.2d 650, at ¶ 41, quoting *OPUS III–VII Corp. v. Ohio Bd. of Pharmacy* (1996), 109 Ohio App.3d 102, 112–113, 671 N.E.2d 1087.

{¶ 17} The United States Supreme Court instructs us that courts do owe deference to an agency's rulemaking authority. In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694, the court held: "[L]egislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." "It is axiomatic that administrative rules are valid unless they are unreasonable, or in clear conflict with the statutory intent of the legislation governing the subject matter. When the potential for conflict arises, the proper subject for determination is whether the rule contravenes an express provision of the statute." *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm.* (1994), 99 Ohio App.3d 269, 273, 650 N.E.2d 498; see *Neinast v. Bd. of Trustees of the Columbus Metro. Library*, 165 Ohio App.3d 211, 2006-Ohio-287, 845 N.E.2d 570, ¶ 17. A rule which is unreasonable, arbitrary, discriminatory, or in conflict with law is invalid and unconstitutional because it surpasses administrative powers and constitutes a legislative function. * * * A rule that bears no reasonable relation to the legislative purposes of the authorizing statute improperly declares policy." *Midwestern College of Massotherapy v. Ohio Med. Bd.* (1995), 102 Ohio App.3d 17, 656 N.E.2d 963, citing *Weber v. Bd. of Health, Butler Cty.* (1947), 148 Ohio St. 389, 35 O.O. 351, 74 N.E.2d 331 and *Carroll v. Dept. of Adm. Serv.* (1983), 10 Ohio App.3d 108, 10 OBR 132, 460 N.E.2d 704.

{¶ 18} Finally, the Ohio Supreme Court has said that in promulgating regulations pursuant to R.C. 3701.143, it must be presumed that the director of health

acted upon adequate investigation and in full awareness of the perceived problems. It further directs lower courts to defer to the department's authority and not to substitute the court's judgment for that of the director of health. *State v. Yoder* (1993), 66 Ohio St.3d 515, 613 N.E.2d 626. Rules issued by administrative agencies pursuant to statutory authority have the force and effect of law. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97.

{¶ 19} In *Reedy,* Franklin App. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, the Tenth District noted that the BAC DataMaster cdm has fundamental differences from the standard BAC DataMaster, including being a smaller, transportable device with a shorter Total Path Length and smaller volume. This court notes, however, that the evidence presented indicates that although the cdm is scientifically different from the Standard, the machines are operationally the same. Further, ODH did not act in an arbitrary or capricious manner or a manner manifestly contrary to statute. To the contrary, ODH was thorough and deliberate in considering whether the permit authorizing operation of the BAC DataMaster could authorize operation of the BAC DataMaster cdm as well.

{¶ 20} Finally, the court will note that it finds persuasive the legal analysis and conclusion in *State v. Calkorsky* (June 8, 2006), Delaware Cty. M.C. No. 05 TRC 15357; *State v. Robinson* (Sept. 27, 2006), Chillicothe M.C. No. 06 TRC 02066; *State v. McLead* (Oct. 11, 2006), Athens Cty. M.C. No.2006TRC03262; and *State v. Mehling* (June 8, 2006), Delaware Cty. M.C. No. 06 TRC 02763.

{¶ 21} The court finds that the ODH permit No. 6 authorizes operation of the BAC DataMaster Standard and the BAC DataMaster cdm. Therefore, the court denies defendant's motion to suppress.

Motion denied.