DECISION
{¶ 1} Relator, Pamela M. Jackson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied relator's request of June 26, 2002, for an adjustment of the start date of an award of permanent total disability ("PTD") compensation, and to adjust the start date of relator's award of permanent total disability compensation based upon an April 24, 2002 report of Dr. Bruce Massau that relator submitted with her request of June 26, 2002.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court,[1] who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate recommended that this court deny relator's request for a writ of mandamus. No party has filed objections to the magistrate's decision.[2]
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained in it. See, generally, Civ.R. 53(E)(4)(a). In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Writ denied.
Lazarus, P.J., and French, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Pamela M. Jackson,: Relator, : v. : No. 04AP-174 Industrial Commission of Ohio and : (REGULAR CALENDAR) Columbus Board of Education, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 20, 2004 Philip J. Fulton Law Office, and William A. Thorman, III,
for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 4} In this original action, relator, Pamela M. Jackson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her June 26, 2002 request for an adjustment of the start date of her award of permanent total disability ("PTD") compensation, and to enter an order that adjusts the start date based upon the April 24, 2002 report of Dr. Massau which relator submitted with her June 26, 2002 request.
 {¶ 5} Findings of Fact:
 {¶ 6} 1. Relator has four industrial claims.
 {¶ 7} 2. On March 13, 2001, relator filed an application for PTD compensation. In support of her application, relator submitted a report from Dr. David C. Randolph dated July 30, 2000. In that report, Dr. Randolph opined that relator cannot return to sustained remunerative employment.
 {¶ 8} 3. Following an April 2, 2002 hearing, a staff hearing officer ("SHO") issued an order granting PTD compensation starting July 30, 2000, based exclusively upon Dr. Randolph's report. The SHO found it unnecessary to evaluate the nonmedical factors. The SHO's order was mailed on April 6, 2002.
 {¶ 9} 4. On April 24, 2002, relator's treating physician, Dr. Bruce A. Massau, wrote:
It is my understanding that Pamela Jackson recently received permanent total disability.
If one takes a good look at Pam, one will note that her disability should start in and around January 1, 1997.
The reason for this is that the MCOs have denied her therapy and appropriate treatment since 1996. We looked at a spinal cord stimulator way back in 1997 and they denied it. They denied MRIs. For a number of years she had to pay for her medications herself, because they even denied medications.
Pam Jackson's total disability should start on January 1, 1997.
 {¶ 10} 5. In a letter dated June 26, 2002, to the commission's hearing administrator, relator requested:
Pursuant to the Industrial Commission Hearing Officers Manual Memo G-3, claimant requests that the starting date for permanent total disability benefits be readjusted to March 13, 1999, or two years from the date of filing of the motion. Claimant makes this request based upon the attached letter from Dr. Bruce Massau.
 {¶ 11} 6. Following an August 7, 2002 hearing before the same SHO who heard the PTD application, the SHO issued an order denying relator's June 26, 2002 request for an adjustment of the PTD start date. The SHO's order of August 7, 2002 states:
The letter, filed by injured worker, on 06/26/2002 is denied. It requested that the starting date for permanent total disability benefits be readjusted to March 13, 1999 (two years from the date of the filing of the Permanent Total Disability application).
Permanent total disability benefits were granted by order dated 04/02/2002 and with a starting date of 07/30/2000. This date is based upon a report by Dr. Randolph of the same date. It is noted that the report of Dr. Randolph was attached to the injured worker's application for permanent total disability benefits. In other words, the injured worker submitted this report in support of her application.
The request for an adjustment of the starting date is based upon a report by Dr. Massau, dated 04/24/2002. The permanent total disability hearing took place on 04/02/2002. As such, this report was not on file at the time of the hearing. The Administrative Rules require that all evidence pertaining to permanent total disability, allocation, and starting dates be in the clam file at the time of the permanent total disability hearing. As such, the report of Dr. Massau, dated 04/24/2002, cannot be considered with respect to the issue of the starting date. Therefore, the order of 04/02/2002 remains in full force and effect.
 {¶ 12} 6. On February 20, 2004, relator, Pamela M. Jackson, filed this mandamus action.
 {¶ 13} Conclusions of Law:
 {¶ 14} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 15} Effective May 7, 2001, the commission published a "Hearing Officer Manual" which contains policies, statements and guidelines. Pertinent here is "Memo G3," which states:
Request for Readjustment of Starting Date and/or Request for Reallocation of Permanent and Total Disability Award
1
If a request for readjustment of a starting date and/or a request for reallocation of a permanent and total disability award from an order issued by Staff Hearing Officers is filed, such request is to be referred to the Hearing Administrator. Every request for adjustment of the permanent and total disability starting date and/or reallocation of permanent total disability compensation is to be accompanied by an explanation supporting why such relief should be granted and the evidence relied on to support the request.
2
Prior to the time the Staff Hearing Officers that issued the order awarding permanent total disability compensation adjudicate the request for readjustment of a starting date and/or a request for reallocation of a permanent and total disability award under 4123.52, the Hearing Administrator is to make initial contact of the requesting party's representative as well as the opposing party's representative to determine whether the request for adjustment of starting date and/or reallocation of the permanent and total disability award is uncontested or contested.
If the opposing parties and the Administrator do not contest the request for adjustment of starting date and/or reallocation and the Staff Hearing Officers are in agreement with the request, the Staff Hearing Officers that issued the order awarding permanent total disability compensation are to issue a supplemental order that conforms with the requirements of the Mitchell case.
If the Hearing Administrator finds that the request is contested, or the Staff Hearing Officers after review, determine that the requested relief is not appropriate, the request is to be scheduled for hearing before the Staff Hearing Officers. The hearing that is held is to be limited to only the issue that is being placed into controversy, whether it is readjustment of starting date or reallocation of the permanent and total disability award. The Staff Hearing Officers are not to reconsider the merits of the original determination that the claimant is permanently and totally disabled, but are limited to the issue of adjustment of starting date and/or reallocation of permanent and total disability compensation.
 {¶ 16} R.C. 4121.31 requires the commission to adopt rules concerning procedures for decision making. State ex rel.Saunders v. Indus. Comm., 101 Ohio St.3d 125, 126,2004-Ohio-339. R.C. 4121.32 requires the commission to supplement its rules with an operating manual. Saunders, at 127. Consistent with these directives, the commission developed a hearing officer manual containing Memo G3. See Saunders.
 {¶ 17} The commission, through its SHO, denied relator's request for a PTD start date adjustment on grounds that the April 24, 2002 report of Dr. Massau was not submitted to the commission as of the hearing of relator's PTD application. The commission held that, because Dr. Massau's report was submitted after the PTD hearing, it could not consider the report. Thus, the report was not considered and relator's request for a start date adjustment was denied.
 {¶ 18} In challenging the commission's decision, relator asserts two propositions: (1) that the commission cannot require that all evidence pertaining to the PTD application be submitted as of the hearing on the PTD application; and (2) that Memo G3 not only permits, but actually requires, a claimant to present new medical evidence to obtain a start date adjustment for a PTD award. The magistrate disagrees with both of relator's propositions.
 {¶ 19} Relator's first proposition ignores State ex rel.Cordray v. Indus. Comm. (1990), 54 Ohio St.3d 99, 101. InCordray, the PTD applicant submitted a vocational report after the hearing on the application but before the commission issued its order denying the application. The commission's order indicated that the vocational report had not been considered. In mandamus, Mr. Cordray argued that the commission abused its discretion by failing to consider the vocational report. TheCordray court disagreed, stating:
There is no statute or rule that specifically requires that all proof be presented prior to or at hearing. Ohio Adm. Code4121-3-09(C)(5), however, provides:
"At hearings with notice, consideration shall be confined to the issues presented in the adjudication of the claim and the parties shall be prepared to fully present their respective positions in regard to such issues. If it appears that the parties are inadequately prepared to present facts bearing upon the issues in the claim, the hearing officer may continue the claim to the end of the hearing docket or to a specific future date with instructions to the parties or their representatives to properly prepare the presentation of their respective positions." (Emphasis added.) See, also, Ohio Adm. Code 4121-2-01(A)(2).
Rather than support a claim of clear legal right, these sections suggest the opposite. Having the discretion to grant or deny additional time for hearing preparation, the commission must also have the discretion to accept or reject evidence submitted thereafter.
 {¶ 20} The magistrate notes that Ohio Adm. Code4121-3-09(C)(5), as quoted in Cordray, remains in effect today and reads the same as it did when it was quoted by the Cordray
court.
 {¶ 21} There was no requirement that the SHO cite toCordray or to Ohio Adm. Code 4121-3-09(C)(5) in his order. The SHO correctly understood the applicable law regarding untimely filed evidence.
 {¶ 22} As previously noted, relator asserts here that Memo G3 not only permits, but actually requires, a claimant to present new medical evidence to obtain an adjusted PTD start date. Relator's asserted proposition misreads Memo G3 and ignores well-settled law regarding the commission's continuing jurisdiction under R.C. 4123.52.
 {¶ 23} The commission's continuing jurisdiction is not unlimited. State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, 541. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by inferior tribunal.State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454, 459.
 {¶ 24} The SHO's order of April 2, 2002, granting PTD compensation starting July 30, 2000, based on Dr. Randolph's report, is a final commission order with respect to the matters adjudicated in that order. Clearly, the start date of the award was finally and conclusively adjudicated in the SHO's order of April 2, 2002.
 {¶ 25} Relator's June 26, 2002 letter, citing Memo G3, was, in effect, a request that the commission exercise continuing jurisdiction over the SHO's order of April 2, 2002, as to the start date of the award.
 {¶ 26} The singular reference to "4123.52" is the only indication in Memo G3 that continuing jurisdiction is involved in a request for a start date adjustment. Nevertheless, even if Memo G3 could be written more clearly, the commission's continuing jurisdiction is the issue when a claimant requests an adjustment of the start date in a final commission order awarding PTD compensation, as occurred in this case.
 {¶ 27} Relator's June 26, 2002 letter fails to identify any prerequisite for the exercise of continuing jurisdiction. However, given that the sole basis for the request was Dr. Massau's April 24, 2002 report, the only conceivable ground for the exercise of continuing jurisdiction when new evidence is submitted is the so-called "newly discovered evidence" rule that falls under the prerequisite identified in Nicholls as new and changed circumstances. However, if the new evidence could have been "discovered" with due diligence prior to the PTD hearing, it cannot be used as a basis for invoking the commission's continuing jurisdiction. Nicholls, at 459.
 {¶ 28} There has been no claim by relator either here or before the commission that Dr. Massau's April 24, 2002 report is newly discovered evidence. Rather, relator simply claims that Memo G3 gives the commission the authority and the clear legal duty to reconsider the PTD start date in light of Dr. Massau's report.
 {¶ 29} The commission cannot expand the scope of its continuing jurisdiction under R.C. 4123.52 by publishing a memo for its hearing officer manual. See State ex rel. Crabtree v.Ohio Bur. of Workers' Comp. (1994), 71 Ohio St.3d 504, 507 (the bureau's "Due Process Policy and Guidelines" were not statutorily supported). Moreover, Memo G3 can be read in a manner consistent with the commission's continuing jurisdiction under R.C. 4123.52. To read Memo G3 as relator would have it read, creates a conflict with well-settled principles regarding the commission's continuing jurisdiction.
 {¶ 30} Memo G3 need not, and cannot, be read to permit or require the submission of new medical evidence to obtain a start date adjustment for a final PTD award when the new evidence fails to meet one of the prerequisites for continuing jurisdiction.
 {¶ 31} The magistrate further notes that relator claims that the commission failed to proceed with a clear legal duty when the hearing administrator allegedly failed to follow a directive of Memo G3 by failing to "make initial contact of the requesting party's representative as well as the opposing party's representative to determine whether the request for adjustment of starting date * * * is uncontested or contested."
 {¶ 32} Relator asserts in her brief filed in this action that "[t]his contact was not made here." (Relator's brief at 10.) However, the parties to this action have not stipulated to relator's factual assertion.
 {¶ 33} Nevertheless, even if it could be stipulated that the hearing administrator failed to make initial contact of the parties' representatives to determine whether the request was uncontested, relator cannot show a clear legal right to relief in mandamus.
 {¶ 34} Relator's June 26, 2002 request did not even facially make the case for the exercise of continuing jurisdiction. The commission properly refused to consider Dr. Massau's report. It is not the duty of the commission, even under Memo G3, to seek an agreement from the parties regarding relief to which the requesting party is clearly not entitled. Under the circumstances of this case, relator has no clear legal right to relief under Memo G3.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke 
KENNETH W. MACKE MAGISTRATE
[1] By entry filed April 21, 2004, Kenneth W. Macke was substituted as magistrate for the previously appointed magistrate, Patricia Davidson.
[2] By entry filed September 9, 2004, this court granted relator's motion for an extension of time to file objections to the magistrate's decision. Relator, however, did not file any objections.