DECISION
{¶ 1} In this original action, relator, Eleftherios Poneris, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its September 18, 2004 order denying his motion to adjust the start date for his permanent total disability ("PTD") award. Relator seeks to have the start date changed from May 15, 2003 to June 9, 2001, based on a June 25, 2004 report from Dr. John M. Roberts.
 {¶ 2} Relator experienced several industrial accidents while employed as a bridge painter for M J Painting Co., Inc. The first accident occurred on October 14, 1990. The second accident occurred on October 5, 1993, and the final accident took place on July 28, 1995. The commission allowed claims relating to each occurrence: claims 90-36221, 93-31497, and 95-628752 respectively.
 {¶ 3} Based on his allowed conditions, relator filed an application for PTD compensation on November 6, 2000. A staff hearing officer ("SHO") heard relator's application on May 9, 2001. In a decision mailed on May 19, 2001, the SHO denied relator's application upon finding that he was capable of performing sustained remunerative employment and, therefore, was not permanently and totally disabled. Relator filed a request for reconsideration with the commission, but the request was denied on October 18, 2001.
 {¶ 4} On February 28, 2003, relator moved for additional claim allowances regarding claim No. 95-628752. The commission allowed the additional claim for "pseudoarthrosis; failed fusion, lumbar spinal; [and] acquired spondylolisthesis."
 {¶ 5} On June 9, 2003, relator filed a new application for PTD compensation. Relator presented a May 15, 2003 report from his treating physician, Dr. Martin L. McTighe, in support of his application. On June 9, 2003, Dr. Steven S. Wunder examined relator at the commission's request. Subsequent to the examination, Dr. Wunder submitted his report, including a physical strength rating form, to supplement the record.
 {¶ 6} A staff hearing officer heard relator's application on January 7, 2004. On January 27, 2004, the SHO issued an order granting PTD compensation beginning May 15, 2003. The SHO based the award on the reports of Drs. McTighe and Wunder, but specifically declined to rely on a July 31, 2001 report or treatment letter submitted by Dr. John Roberts. The hearing officer stated that he did not consider the report because it did not specifically indicate that relator was permanently and totally disabled. Further, the report had already been considered as an attachment to relator's motion to reconsider the commission's denial of the first application for PTD compensation.
 {¶ 7} On June 18, 2004, relator moved for an adjustment of the start date of the PTD award. Relying on a new report by Dr. Roberts, dated June 25, 2004, relator requested that the start date be changed to June 9, 2001. On September 15, 2004, the matter was heard by an SHO. In an order mailed on September 18, 2004, the SHO denied relator's request. The SHO stated:
[Relator's] argument was previously advanced at the [PTD] hearing of 1/07/2004, was considered and was rejected by the Hearing Officer per the permanent total disability order issued 01/07/2004. [That] order clearly indicates the reason why a start date of 06/09/2001 is not appropriate. The 06/25/2004 report from Dr. Roberts gives no basis for his opinion that [PTD] should start as of July, 1999.
 {¶ 8} On October 4, 2004, relator filed for reconsideration. On November 20, 2004, the commission denied relator's request as untimely filed. Relator filed this mandamus action on February 3, 2005.
 {¶ 9} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. On July 21, 2005, the magistrate issued his decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate found that relator failed to claim any ground for the commission's exercise of continuing jurisdiction over the previously ordered start date. Accordingly, relator failed to demonstrate a clear legal right to the relief sought. The magistrate recommended that the court deny relator's request for mandamus.
 {¶ 10} Relator filed timely objections to the magistrate's decision, contending that the magistrate was without jurisdiction to render his decision based on the tenet of continuing jurisdiction. Relator further asserts that, because the magistrate decided the case on inappropriate grounds, we should issue an independent decision based on whether or not the commission had some evidence supporting its decision.
 {¶ 11} To establish a right to a writ of mandamus, relator must prove three requirements: (1) that he has a clear legal right to the relief prayed for; (2) that the respondent is under a clear legal duty to perform the act requested; and (3) relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle
(1983), 6 Ohio St.3d 28. Thus, in order for this court to issue a writ of mandamus to remedy a determination of the commission, we must find that the relator established that he has a clear legal right to the sought relief and that the commission had a clear legal duty to provide that relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. Here, the magistrate determined that relator failed to establish either element because his application failed to properly invoke the commission's continuing jurisdiction.
 {¶ 12} The commission's exercise of continuing jurisdiction is governed by R.C. 4123.52, which provides, in pertinent part:
The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
While broad, the commission's continuing jurisdiction is not without limits. State ex rel. B C Machine Co. v. Indus. Comm. (1992),65 Ohio St.3d 538, 541. "`Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal.'" State ex rel. Collins v.Indus. Comm., Franklin App. No. 04AP-31, 2004-Ohio-7201, at ¶ 19, quoting State ex rel. Nichols v. Indus. Comm. (1998), 81 Ohio St.3d 454,459.
 {¶ 13} Relator's motion for adjustment of the start date of his PTD compensation did not specifically refer to the commission's continuing jurisdiction. However, the January 27, 2004 order granting relator PTD compensation beginning May 15, 2003, constituted a final order by the commission regarding the matters adjudicated therein. As such, relator's requested adjustment must be interpreted as an effort to re-litigate that issue, which requires the commission to exercise continuing jurisdiction pursuant to R.C. 4123.52. Of the possible prerequisites, only one can be construed as pertinent — relator must show new or changed circumstances since the original award. Collins, supra, at ¶ 41.
 {¶ 14} The only new evidence presented in support of a new start date was the June 25, 2004 report of Dr. Roberts. The SHO found that the report gave no basis for Dr. Roberts' opinion that the start date should be moved. Reviewing Dr. Roberts' report, we must agree. The report, in the form of a letter to relator's attorney, merely states:
* * * I have reviewed the medical records in regard to the above claimant. It is apparent that his back injury occurred in July, 1995. Surgery was performed by Dr. Richard Weimann in 1998. He informed me that his temporary total disability payments stopped as of July, 1999, or approximately one year following the surgery performed by Dr. Weimann. Now that this individual is permanently and totally disabled it is my opinion that the starting date for that level of disability should correctly be listed as July, 1999. I offer this opinion within reasonable medical probability.
Dr. Roberts' report, at most, seems to indicate that, because relator's temporary total disability payments stopped as of July 1999, and because relator is now permanently disabled, his permanent total disability payments should be applied from that point on. No other basis, medical or otherwise, is implicated. Indeed, nothing in Dr. Roberts' report indicates that circumstances have changed or otherwise provides a basis for adjusting the start date of compensation.
 {¶ 15} Since no new or changed circumstances were presented, the commission's continuing jurisdiction was not properly invoked. Consequently, relator failed to establish that he has a clear legal right to the relief sought or that the commission had a clear legal duty to provide that relief. The magistrate properly determined the matter, and relator is not entitled to a writ of mandamus.
 {¶ 16} Furthermore, even if continuing jurisdiction was proper, relator has not shown that the commission abused its discretion. Again, the only evidence before the commission that was not part of the record at the time of the original PTD determination was Dr. Roberts' June 25, 2004 report. Nothing in that report constitutes evidence supporting the adjustment of the start date other than Dr. Roberts' unsubstantiated opinion that "the starting date for that level of disability should correctly be listed as July, 1999."
 {¶ 17} Relator argues that other medical evidence demonstrating that he had been disabled since the date of his surgery — or well before the original start date of his PTD — is in the record and constitutes some evidence in support of his application. However, that evidence was also before the commission during the original PTD determination. Relator may not now, under the guise of an application for the readjustment of the start date of his PTD, appeal the merits of the underlying opinion granting PTD.
 {¶ 18} We overrule relator's objections to the magistrate's decision. After examining the magistrate's decision, and conducting an independent review of the record pursuant to Civ.R. 53, we find that the magistrate properly reviewed and applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation and decision, relator's requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Eleftherios Poneris, :
 Relator, :
 :
v. : No. 05AP-111
 :
Industrial Commission of Ohio : (REGULAR CALENDAR)
and M J Painting Co., Inc., :
 :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on July 21, 2005 Harris Burgin, L.P.A., and Jeffrey W. Harris, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 19} In this original action, relator, Eleftherios Poneris, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion to adjust the start date for his permanent total disability ("PTD") award from May 15, 2003 to June 9, 2001, based upon a June 25, 2004 report from Dr. John M. Roberts.
Findings of Fact:
 {¶ 20} 1. Relator has three industrial claims. His October 14, 1990 injury is allowed for "strained lower back; herniated nucleus pulposus lumbar region, L4-5 with myelopathy and lumbar disc displacement," and is assigned claim number 90-36221. His October 5, 1993 injury is allowed for "cervical sprain/strain; thoracic sprain/strain; aggravation of pre-existing degenerative arthritis of the cervical spine," and is assigned claim number 93-31497. His July 28, 1995 injury is allowed for "aggravation of pre-existing herniated disc L4-5," and is assigned claim number 95-628752.
 {¶ 21} 2. On November 6, 2000, relator filed an application for PTD compensation. Following a May 9, 2001 hearing, a staff hearing officer ("SHO") issued an order denying PTD compensation. Relator moved for reconsideration of the May 9, 2001 SHO order. On October 18, 2001, the commission denied reconsideration.
 {¶ 22} 3. On February 28, 2003, relator moved for additional claim allowances in claim number 95-628752. On April 28, 2003, the Ohio Bureau of Workers' Compensation ("bureau") additionally allowed the claim for "pseudoarthrosis; failed fusion, lumbar spinal; acquired spondylolisthesis."
 {¶ 23} 4. On June 9, 2003, relator filed another PTD application. The application was supported by a report or office note, dated May 15, 2003, from relator's treating physician Martin L. McTighe, M.D. In his report, Dr. McTighe wrote: "This individual is permanently and totally disabled. He will not be able to return to his former occupations nor will he return to any regular gainfull [sic] employment situation."
 {¶ 24} 5. On September 25, 2003, relator was examined, at the commission's request, by Steven S. Wunder, M.D., who wrote:
Based upon the AMA Guides to the Evaluation of Permanent Impairment,
fourth edition, for aggravation of pre-existing herniated disc at L4-5, pseudoarthrosis, failed fusion lumbar spine, acquired sponylolisthesis, strained lower back, and L4-5 disc herniation with myelopathy and lumbar disc displace-ment, he would have a DRE Cagtegory V impairment. This equates to a 25% impairment to the whole person.
For the diagnoses of cervical sprain/strain, thoracic sprain/-strain, and aggravation of pre-existing degenerative arthritis of the cervical spine, he would have a DRE Category III impairment from Table 73, page 110, which is 10%. This would combine to a 33% impairment to the whole person.
* * *
The physical strength rating for this patient would be less than sedentary. He has significant deformity of his spine, acquired spondylolisthesis, and ongoing evidence of radicular symp-toms and signs. Because of the cervical strain and de-generative arthritis in the neck, he would have limitations with cervical movements. There is no indication of symptom magnification, and his objective findings support his subjective complaints.
 {¶ 25} 6. On September 25, 2003, Dr. Wunder completed a physical strength rating form on which he indicated by checkmark "This injured worker is not capable of physical work activity."
 {¶ 26} 7. Following a January 7, 2004 hearing, an SHO issued an order granting PTD compensation starting May 15, 2003. The PTD award was based upon the May 15, 2003 report from Dr. McTighe and the reports from Dr. Wunder. The SHO's order further states:
The Hearing Officer rejects the Injured Worker's request for payment of temporary total compensation [sic] to commence on 06/09/01 two years prior to the filing of the permanent total disability application. In making this request, the Injured Worker's representative relies on the 07/31/01 report of Dr. Roberts.
The Hearing Officer declines to rely on the report of [Dr.] Robert[s'] as it does not specifically indicate that the Injured Worker's condition is permanently and totally disabling.
Further, the report of Dr. Roberts was attached to the 09/14/01 motion for reconsideration of the Injured Worker's permanent total disability compensation which was denied on 05/19/01. This request for reconsideration was denied by the Industrial Commission on 10/18/01.
As the Commission declined to rely on that report to grant reconsideration, the Hearing Officer finds that it is not proper to consider that report for the purposes of a start date for permanent and total disability benefits.
 {¶ 27} 8. The record contains the July 31, 2001 report of Dr. Roberts discussed in the SHO's order. The report is actually Dr. Roberts' letter to Dr. McTighe. The report or letter states:
* * * It is my opinion he has formed a pseudarthrosis from L4 to the sacrum and this is responsible for his ongoing pain. His treatment choices are very limited and essentially boil down to either chronic pain management or a second attempt at achieving a solid fusion. If he elects to proceed with a secondary surgery, I have recommended an anterior/posterior spine fusion which we have discussed briefly today.
 {¶ 28} 9. On June 18, 2004, relator moved that the start date of his PTD award be adjusted to June 9, 2001, based upon a new report from Dr. Roberts dated June 25, 2004, stating:
* * * I have reviewed the medical records in regard to the above claimant. It is apparent that his back injury occurred in July, 1995. Surgery was performed by Dr. Richard Weimann in 1998. He informed me that his temporary total disability payments stopped as of July, 1999, or approximately one year following the surgery performed by Dr. Weimann. Now that this individual is permanently and totally disabled it is my opinion that the starting date for that level of disability should correctly be listed as July, 1999. I offer this opinion within reasonable medical probability.
 {¶ 29} 10. Following a September 15, 2004 hearing, an SHO issued an order denying relator's motion to adjust the start date. The SHO's order of September 15, 2004 states:
The injured worker's C-86 motion * * * requesting readjust-ment of the start date for permanent total disability to 06/09/2001 is denied. This argument was previously advanced at the permanent total disability hearing of 01/07/2004, was considered and was rejected by the Hearing Officer per the permanent total disability order issued 01/07/2004. The 01/07/2004 order clearly indicates the reason why a start of 06/09/2001 is not appropriate. The 06/25/2004 report from Dr. Roberts gives no basis for his opinion that permanent total disability should start as of July, 1999.
 {¶ 30} 11. Relator moved for reconsideration of the SHO's order of September 15, 2004. On November 20, 2004, the commission mailed an order denying reconsideration.
 {¶ 31} 12. On February 3, 2005, relator, Eleftherios Poneris, filed this mandamus action.
Conclusions of Law:
 {¶ 32} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 33} Effective May 7, 2001, the commission published a "Hearing Officer Manual" which contains policy statements and guidelines. Pertinent here is "Memo G3" which states:
If a request for readjustment of a starting date * * * of a permanent and total disability award from an order issued by Staff Hearing Officers is filed, such request is to be referred to the Hearing Administrator. Every request for adjustment of the permanent and total disability starting date * * * is to be accompanied by an explanation supporting why such relief should be granted and the evidence relied on to support the request.
Prior to the time the Staff Hearing Officers that issued the order awarding permanent total disability compensation adjudicate the request for readjustment of a starting date * * * of a permanent and total disability award under 4123.52, the Hearing Administrator is to make initial contact of the requesting party's representative as well as the opposing party's representative to determine whether the request for adjustment of starting date * * * of the permanent and total disability award is uncontested or contested.
If the opposing parties and the Administrator do not contest the request for adjustment of starting date * * * and the Staff Hearing Officers are in agreement with the request, the Staff Hearing Officers that issued the order awarding permanent total disability compensation are to issue a supplemental order that conforms with the requirements of the Mitchell case.
If the Hearing Administrator finds that the request is contested, or the Staff Hearing Officers after review, deter-mine that the requested relief is not appropriate, the request is to be scheduled for hearing before the Staff Hearing Officers. The hearing that is held is to be limited to only the issue that is being placed into controversy, whether it is readjustment of starting date * * * of the permanent and total disability award. The Staff Hearing Officers are not to reconsider the merits of the original determination that the claimant is permanently and totally disabled, but are limited to the issue of adjustment of starting date * * * of permanent and total disability com-pensation.
 {¶ 34} R.C. 4121.31 requires the commission to adopt rules concerning procedures for decision making. State ex rel. Saunders v. Indus. Comm.,101 Ohio St.3d 125, 126, 2004-Ohio-339. R.C. 4121.32 requires the commission to supplement its rules with an operating manual. Saunders, at 127. Consistent with these directives, the commission developed a hearing officer manual containing Memo G3. See Saunders.
 {¶ 35} While the parties to this action did not cite or address Memo G3, it is obviously pertinent to relator's motion for readjustment of the PTD start date.
 {¶ 36} While the singular reference to "4123.52" is the only indication in Memo G3 that the commission's continuing jurisdiction is involved in a request for a start date adjustment, clearly relator's June 18, 2004 motion at issue here must be viewed as a request that the commission exercise continuing jurisdiction over the SHO's order of January 7, 2004, as to the start date of the award. See State ex rel.Jackson v. Indus. Comm., Franklin App. No. 04AP-174, 2004-Ohio-6524. The SHO's order of January 7, 2004, is a final commission order with respect to the matters adjudicated in that order, including the start date for the award.
 {¶ 37} The commission's continuing jurisdiction is not unlimited.State ex rel. B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538,541. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by inferior tribunal. State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454, 459.
 {¶ 38} Apparently, relator's June 18, 2004 motion for a start date adjustment did not specify that the commission's continuing jurisdiction was being invoked. Neverthe-less, because the motion was supported by a new report from Dr. Roberts, the only conceivable ground for the exercise of continuing jurisdiction when new evidence is submitted is the so-called "newly discovered evidence" rule that falls under the prerequisite identified in Nicholls as new and changed circumstances. However, if the new evidence could have been "discovered" with due diligence prior to the PTD hearing, it cannot be used as a basis for invoking the commission's continuing jurisdiction. Nicholls, at 459.
 {¶ 39} There has been no claim by relator either here or before the commission that Dr. Roberts' June 25, 2004 report is newly discovered evidence. Nor does it appear from the record that relator could persuasively make such a claim.
 {¶ 40} In short, relator's June 18, 2004 motion for a start date adjustment was fatally flawed on its face, having failed to claim any ground for the exercise of continuing jurisdiction over the start date previously adjudicated.
 {¶ 41} Here, and before the commission, relator seems to have assumed that he is entitled to a de novo review of the PTD start date by simply filing for a start date adjustment following the commission's issuance of its final order adjudicating the PTD application. Relator is incorrect in that assumption.
 {¶ 42} Given the above analysis, the explanation in the SHO's order of September 15, 2004 for denying relator's motion is largely irrelevant. Thus, relator's challenges here to the SHO's explanation for denial of the motion need not be addressed by this court. Regardless of the SHO's explanation for denial of the motion, it is clear that relator failed to present even a prima facie claim for the exercise of continuing jurisdiction over the start date previously adjudicated. Under such circumstances, relator has failed to show a clear legal right to relief in mandamus.
 {¶ 43} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.