BULLUCKS, APPELLANT, *v.* GENERAL MOTORS ACCEPTANCE CORPORATION, APPELLEE.

(No. C-820222—Decided
January 5, 1983.)

*Mr. R. Gregory Park,* for appellant.
*Messrs. Steer, Strauss, White & Tobias* and *Mr. Charles H. Tobias, Jr.,* for appellee.

PALMER, P.J. This cause came on to be heard on an appeal from the Hamilton County Municipal Court.

Plaintiff-appellant filed a complaint stating four claims for relief against defendant-appellee growing out of a sale and subsequent repossession by the latter of an automobile transferred to the plaintiff. General denials were entered by the defendant to all claims for relief. Cross-motions for summary judgment were filed by both parties as to the third and fourth claims for relief, which asserted claims arising under R.C. Chapter 1317, the Retail Installment Sales Act, and R.C. Chapter 1345, the Consumer Sales Practices Act. The trial court, after considering the materials submitted in support thereof, dismissed plaintiff's motion and granted defendant's cross-motion for summary judgment as to claims three and four. The judgment entry, bearing appropriate language under Civ. R. 54(B) that there was no just reason for delay, was timely appealed, with two assignments of error presented for review.

The decision of the trial court, as revealed in its written opinion of February 3, 1982, was predicated upon two grounds: that the facts revealed no violation of the two consumer protection acts in question and, in any event, that the action was barred by the statute of limitations dealing with statutes providing for penalties and forfeitures, R.C. 2305.11(A), having failed to initiate the action within the applicable one-year period. Plaintiff's first assignment of error raises the question of the statute of limitations, and his second argues the applicability of the consumer protection acts to the facts in question. Since we find the latter dispositive of the issue on appeal, we address it first.

The plaintiff's statement of the issues presented for review under his second assignment of error poses the problem with precision:

"1. A retail installment sales contract which contains a finance charge in excess of the charge allowed by R.C. 1317.06 is unenforceable pursuant to R.C. 1317.08.

"2. The contracting for and charging of an excessive finance charge constitutes a violation of the Consumer Sales Practices Act, R.C. Chapter 1345."

The installment sales contract in question reveals the following relevant details in connection with plaintiff's purchase of the used 1976 Mercury Monarch from Jake Sweeney Chevrolet, Inc.:

"1. Cash Price $3756.78
"2. Total Downpayment 1200.00
"3. Unpaid Balance of Cash Price 2556.78
"4. Other Charges
    "C. Cost of Creditor Insurance for the term hereof:
            "Life 68.84
            "Disability 131.36
    "E. Certificate of Title and Notation Fees 3.50
    "F. Other (Doc. Fee $5.00, Ext. SVC Cont. $185.00) 190.00
"5. Unpaid Balance — Amount Financed 2950.48
"6. Finance Charge (Base Finance Charge $707.84; Service Charge $63.00) 770.84
"7. Total of Payments 3721.32
"8. Deferred Payment Price 4921.32
"9. Annual Percentage Rate 15.75%
"10. Payment Schedule: The Total of Payments * * * is payable at seller's office * * * in 36 installments of $103.37 each, commencing 9-15-79, and on the same day of each successive month thereafter * * *."

This contract was executed on August 1, 1979.[1]

The plaintiff does not challenge the propriety of the mathematical computation of the finance charge, but asserts that it was predicated upon the inclusion within the amount to be financed ($2,950.48) of three arguably improper amounts, *viz.*, the charge for the extended service contract ("Ext. SVC Cont.") of $185, and the two fee charges of $5.00 and $3.50. The balance of the charges are not contested by the plaintiff.

The plaintiff argues that, under R.C. 1317.06, a finance charge may be assessed only upon the "principal balance" of the contract, a term further defined by R.C. 1317.04 in part, as follows:

"The written instrument evidencing a retail installment sale and required by section 1317.02 of the Revised Code shall recite the following:

"(A) The cash price of the specific goods.

"(B) The amount in cash of the retail buyer's down payment, if any, whether made in money or goods or partly in money or partly in goods.

"(C) The unpaid balance of the cash price payable by the retail buyer to the retail seller which is the difference between divisions (A) and (B).

"(D) The cost to the retail buyer of any *insurance* the retail buyer has agreed to procure, if the retail seller has agreed to purchase the insurance and extend credit to the retail buyer for the price thereof.

"(E) *The principal balance* owed on the retail installment contract which is the sum total of divisions (C) and (D).

"(F) The amount of the finance charge." (Emphasis added.)

Preliminarily, we note plaintiff's characterization of the charge for the extended service — otherwise identified as "D.A.C. Mechanical Insurance" in the Retail Buyer's Order — as an extended service warranty, and not insurance at all. That charge, plaintiff argues, and the two fee charges, are not items which are includable components of the principal balance upon which interest can be charged. Therefore, plaintiff asserts, the finance charge assessed on the $2,950.48 exceeded the amount permissible under R.C. 1317.06(A)(1), requiring a determination that the contract was unenforceable against the plaintiff under R.C. 1317.08. We do not agree.

It should be noted, initially, that we are concerned under the instant facts only with the charge of $185 for the extended service contract. If that charge was a permissible component of the principal balance under R.C. 1317.04, then concededly the finance charge levied against the plaintiff was within the statutory limits of R.C. 1317.06, whether or not the two fees aggregating $8.50 were also included therein. Since we decide that the $185 charge was, in fact, a permissible component of the principal balance, we do not reach the question of the propriety of including the documentary fee and title fee in said balance, and therefore decline to rule thereon.

With respect to the document incurring the $185 charge, we note that while it is referred to in the contract documents as an "extended service contract" or "mechanical insurance," it is actually an agreement with Dealers Alliance Corporation that for a period of one year or twelve thousand miles, D.A.C. will, in general, repair or replace certain specified components of the automobile (*e.g.*, engine, transmission, drive axle

---

[1] Defendant points out that R.C. 1317.06 would have permitted it to compute its base finance charge and service charge on the basis of the fractional portion of the month forgiven when plaintiff was permitted to commence payments on September 15th. Had it done so, aggregate finance charges would have been $792.53, or $21.69 more than was actually charged.

assembly, brakes, etc.) in the event of mechanical breakdown or failure caused by a defective part or faulty workmanship. The agreement is headed with the language "This Document Is A Motor Vehicle Service Contract (Or Limited Vehicle Warranty)," and includes among its "Important Notices" paragraphs entitled:

"5. This Is The Only Dealer Warranty On This Vehicle

"6. Implied Warranties Limited

"7. This Warranty Gives you Specific Legal Rights."

Notwithstanding this warranty language and the general form of the agreement, the defendant argues in passing that it represents "insurance" specifically includable within the principal balance upon which a finance charge may be predicated, citing R.C. 1317.04(D). The point is doubtful, to say the least, [2] but is unnecessary to decide since we conclude that the charge for the contract in question between the plaintiff and Dealers Alliance Corporation — even assuming, arguendo, that it represents a warranty and not an insurance contract — was properly includable as a component of the principal balance upon which the finance charge was calculated.

Thus, under R.C. 1317.04, the "principal balance" consists, in part, of the unpaid balance of the cash price of the specific goods payable by the retail buyer to the retail seller. The phrase "specific goods," in turn, is defined by R.C. 1317.01(D):

" 'Specific goods' means goods, *including related services*, identified and agreed upon at the time a contract to sell or a sale is made." (Emphasis added.)

Here, there is no question that the D.A.C. contract was identified and agreed upon at the time the retail installment sale was entered into. The sole question is whether the contract was a "related service" within the meaning of R.C. 1317.01(D). We conclude that it was.

It is a matter of common knowledge, of which judicial notice will be taken, that warranties of varying lengths and coverages accompany most, if not all, new car sales. Indeed, considerable emphasis is placed by the various makers in their advertising on the alleged superiority of their warranties *vis-a-vis* their competitors. While no separate identifiable charge to buyers is made for these warranties, it is not to be presumed that they are without substantial cost to the manufacturer to make and are not, therefore, calculated along with all other costs in determining the ultimate basic sale price of the automobile. Neither is it to be presumed that these warranty practices are without interest to buyers and thus without advantage to the manufacturers; highly competitive commerce does not customarily engage inexpensive feckless acts. It seems to us indisputable that the furnishing of warranties against breakdown or faulty workmanship in the sale of new cars is a service to buyers both expected and demanded; that it is, indeed, a "related service" to the specific goods involved in the sale just as surely as transportation charges or preparation costs would be.

In the sale of used cars, however, no such universal custom or practice appears to exist. Warranties accompanying the sale of used cars appear to be a matter of seller's choice or a matter of negotiation between the parties. In the instant case, the Retail Buyer's Order indicates that the seller offered the plaintiff several choices, one of which was stated as "Unit Sold 'As Is' No Warranty Expressed Or Implied." The plaintiff elected the form of

---

[2] See *State, ex rel. Duffy*, v. *Western Auto Supply Co.* (1938), 134 Ohio St. 163 [11 O.O. 583], for the rule in distinguishing warranties from insurance. See, also, *Mein* v. *United States Car Testing Co.* (1961), 115 Ohio App. 145 [20 O.O.2d 243].

warranty described as ''D.A.C. Mechanical Insurance'' and agreed to pay $185 therefor. So far as the instant question is concerned, we see no difference between this procedure and that which controls in new car sales, where the warranty would have been furnished automatically and the $185 cost would appear as part of the basic sale price. Both instances appear to us to involve ''related services'' within the meaning of R.C. 1317.01(D) and, therefore, are part of the cash price of the specific goods which, under R.C. 1317.04, becomes a component of the principal balance upon which finance charges may be imposed. *Turoff* v. *Halle Bros. Co.* (Cuyahoga C.P. 1974), 72 O.O. 2d 261.

It follows that if, as we conclude, there has been no violation by defendant of the Retail Installment Sales Act, R.C. Chapter 1317, there has been no unfair or deceptive act in violation of the Consumer Sales Practice Act, R.C. Chapter 1345, since the latter depended solely upon those acts said to have constituted a violation of the former. No other independent grounds are asserted as transgressing R.C. Chapter 1345, and none exist so far as our examination of the record is concerned. We therefore overrule the second assignment of error.

Plaintiff's first assignment of error, as noted previously, attacks the alternate basis for the judgment of the trial court, *i.e.*, the determination that the one-year statute of limitations, R.C. 2305.11(A), applies to the instant complaint, barring as untimely the institution of the within action. However, as we have seen from our disposition of the preceding assignment of error, even if we assume the correctness of plaintiff's position that the trial court erred in applying the one-year limitation period rather than the six-year period of R.C. 2305.07, the determination avails plaintiff nothing since the fundament for the third and fourth claims for relief is wholly absent. Summary judgment against the plaintiff was accordingly

properly entered. The first assignment of error, thus subsumed in our disposition of the second, is without merit.

The judgment is affirmed.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.