OPINION AND JOURNAL ENTRY *Page 2 
{¶ 1} Petitioner James Turner has filed an original action in this court against respondent Michelle Eberlin, the Warden of the Belmont Correctional Institution (BCI), and competing summary judgment motions were filed. The issue is whether certain money is being improperly withdrawn from petitioner's prison account to satisfy a court judgment. More specifically, the issue is whether respondent's withdrawal of non-earnings is in violation of the relevant administrative rule which refers only to attachment of "monthly income received." There are no genuine issues of material fact here as the only issues presented for our review are legal ones.
 {¶ 2} For the following reasons, we hold that petitioner has established a clear legal right to the relief sought, a corresponding clear duty on the part of respondent, and the lack of an adequate remedy at law. As such, summary judgment is granted for petitioner, and a writ of mandamus shall issue prohibiting the warden from attaching gifts or other non-earnings from petitioner's account.
 PROCEDURAL HISTORY {¶ 3} In a December 2005 judgment entry, a Stark County Court imposed a $1,000 fine upon appellant and ordered him to pay court costs. A cost statement set the costs at $1,025.89 with $69 received. Thus, the prison was to garnish $1,956.89 from petitioner's prison account. Petitioner had no concerns with the garnishment or the initial payments which were intercepted from his state pay. However, when a $15 money order he received as a gift from family was intercepted, he protested based upon the language of Ohio Administrative Code [O.A.C.] 5120-5-03(E), which refers only to "monthly income" as the source for garnishment.
 {¶ 4} On February 1, 2007, petitioner filed a petition for writ of mandamus against respondent as the warden of the prison where he is an inmate. He alleged that the prison has withdrawn and will continue to withdraw money from his prison account contrary to the plain language of O.A.C. 5120-5-03(E). He posited that this rule prohibits garnishment of gifts from friends and family since it states the garnishment shall be from "monthly income." He then set forth definitions of income and gift from Webster's Dictionary. He deduced that only his state pay is subject to *Page 3 
garnishment and therefore the prison's act of intercepting a $15 money order he received as a gift was improper.
 {¶ 5} He attached to his petition a portion of BCI's interpretation of the rule. This statement, written on Ohio Department of Corrections and Rehabilitation (ODRC) letterhead, states that the money subject to garnishment "includes the amount of state pay above $10 and any money that is received into your account from outside sources such as friends and family." He also attached to his petition a statement of his account from the prison showing his earnings, his other receipts and money intercepted and paid toward the court judgment. Petitioner concluded that the prison's statement and actions conflict with the plain language of the rule.
 {¶ 6} Respondent filed an answer. Regarding petitioner's arguments on the plain language of rule, respondent stated that she neither admitted nor denied such allegations. Respondent then alleged that the petitioner failed to state a claim, that petitioner does not have a clear legal right to relief, and that respondent has no clear legal duty to perform. Respondent also claimed that petitioner has an adequate remedy at law, that petitioner's claim was subject to the institutional grievance process, and thus he improperly failed to file an affidavit of exhaustion. See R.C. 2969.26(A) (inmate who filed civil action against government official must file affidavit regarding date of grievance and a copy of the decision if the claim is subject to the institutional grievance system). Respondent concluded by asking this court to dismiss the mandamus action.
 {¶ 7} This court allowed petitioner to respond to the answer pursuant to Civ.R. 7(A). In doing so, he attached the warden's decision sheet regarding petitioner's court judgment. This decision noted that petitioner filed no objection to the warden's notice of a garnishment order. Since it only mentioned exemptions as a reason for objection, the petitioner concluded that his claim is not subject to the grievance process as he is not alleging an exemption. See R.C. 2329.66 (listing the general exemptions for civil garnishments).
 {¶ 8} This court denied respondent's motion to dismiss and ordered the filing of summary judgment motions and specifically ordered the parties to brief the legal issues concerning the language of the rule and meaning of "monthly income" as used *Page 4 
in the rule. Competing motions for summary judgment and responses were filed in May 2007. We shall address the arguments contained in those filings under the relevant sections below.
 GENERAL LAW ON MANDAMUS {¶ 9} A mandamus action can be used to compel compliance with the law where a public official is alleged to be violating that law to the petitioner's detriment. See State ex rel. McClintick v. Lazaroff,98 Ohio St.3d 474, 2003-Ohio-2073 (where inmate filed mandamus action against warden for return of typewriter alleging misinterpretation of Administrative Code and prison policy). In order to be entitled to mandamus, the petitioner must show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to abide by that right and the lack of an adequate remedy at law. Id. at ¶ 5.
 {¶ 10} Here, it is essentially conceded that if petitioner has a clear legal right, then respondent has a clear legal duty. As such, these prongs of the test will be discussed together where we can determine the proper interpretation of O.A.C. 5120-5-03(E). Then, we shall discuss whether petitioner has an adequate remedy at law.
 RELEVANT STATUTE AND RULE {¶ 11} The enabling statute is set forth in R.C. 5120.133 and provides:
 {¶ 12} "(A) The department of rehabilitation and correction, upon receipt of a certified copy of the judgment of a court of record in an action in which a prisoner was a party that orders a prisoner to pay a stated obligation, may apply toward payment of the obligation money that belongs to a prisoner and that is in the account kept for the prisoner by the department. The department may transmit the prisoner's funds directly to the court for disbursement or may make payment in another manner as directed by the court. Except as provided in rules adoptedunder this section, when an amount is received for the prisoner's account, the department shall use it for the payment of the obligation and shall continue using amounts received for the account until the full amount of the obligation has been paid. No proceedings in aid of execution are necessary for the department to take the action required by this section.
 {¶ 13} "(B) The department may adopt rules specifying a portion of aninmate's earnings or other receipts that the inmate is allowed to retainto make purchases from *Page 5 the commissary and that may not be used to satisfy an obligationpursuant to division (A) of this section. The rules shall not permit the application or disbursement of funds belonging to an inmate if those funds are exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order pursuant to section 2329.66 of the Revised Code or to any other provision of law." (Emphasis added).
 {¶ 14} With this statute as authority, the ODRC adopted O.A.C. 5120-5-03. The stated purpose of the rule is to establish guidelines and procedures for withdrawing money that belongs to an inmate and that is in an account kept for the inmate by the prison upon receiving a court judgment that orders the inmate to pay an obligation. O.A.C. 5102-5-03(A). After receiving a judgment, the warden's designee is to determine if the judgment is facially valid and then must deliver to the inmate adequate notice of the debt and the intent to seize money from the inmate's account. The notice must adequately inform the inmate of the right to claim exemptions, the types of exemptions available under R.C. 2329.66, the right to raise a defense and the opportunity to discuss the objections with the warden's designee. O.A.C. 5120-5-03(C).
 {¶ 15} As related to R.C. 5120.133(B) regarding the portion of earnings or other receipts that the inmate can retain, the rule provides the following two procedures depending upon whether the inmate's account contains enough to satisfy the entire judgment:
 {¶ 16} "(D) If withdrawals are authorized and if there are sufficientfunds in the inmate's account to satisfy the amount shown as due, aslong as the account retains ten dollars for inmate expenditures, thedesignee shall promptly cause a check to be issued payable to the clerk of the court or other appropriate authority issuing the order.
 {¶ 17} "(E) If withdrawals are authorized and if there areinsufficient funds in the inmate's account to satisfy the amount shownas due, a monthly check shall be issued payable to the appropriate clerk's office or in another matter as directed by the court, for theamount of monthly income received into the inmate's account whichexceeds ten dollars until the full amount of the court obligation has been paid. The hold shall remain on the inmate's account until sufficient funds have been paid to satisfy the *Page 6 
amount shown as due on the balance remaining thereon." O.A.C. 5120-5-03 (Emphasis added).
 CLEAR LEGAL RIGHT TO RELIEF CLEAR LEGAL DUTY TOPERFORM {¶ 18} Petitioner recites law on the application of the plain language of a rule and urges that the phrase "monthly income" clearly means earnings, not gifts. He notes that the prison has intercepted two more money orders from his family since the institution of the action. Petitioner points out that the enabling statute delegated power to the Director of the ODRC to designate the portion of the inmate's "earnings or other receipts" that he is permitted to retain for spending in the commissary. See R.C. 5120.133(B). He then points out that in using his discretion on this matter, the Director only subjected "monthly income" to garnishment where the inmate's account does not have enough to cover the entire judgment. See O.A.C. 5120-5-03(E). Based upon the stated interpretation and the present factual application of the rule, petitioner concludes that the warden has improperly rewritten the rule's plain language. He continues that even assuming the rule is ambiguous, we should apply a rule of lenity since the rule deals with the criminal fines and costs.
 {¶ 19} Respondent contends that petitioner has failed to show a clear legal right to relief and failed to show that respondent is under the corresponding clear legal duty to perform. In support, respondent cites R.C. 5120.133 (the enabling statute) as allowing ODRC to apply toward the court obligation any money that belongs to a prisoner and that is in his prison account. Respondent then generally cites O.A.C. 5120-5-03, the rule at issue, as stating that if there are funds in the inmate's account, which exceed $10, the designee shall promptly issue a check to the clerk of courts. Respondent abruptly concludes, without attempting to define the rule's "monthly income received" language, that there is no exception for gifts received by friends or family in any of the relevant laws, citing R.C. 5120.133, O.A.C. 5120-5-03 and R.C. 2329.66.
 {¶ 20} It is often stated that courts should give due deference to administrative interpretations since the legislature has delegated the responsibility of implementing certain statutes to the agency and the agency has accumulated substantial expertise on its subject. State exrel. Saunders v. Industrial Commn., 101 Ohio St.3d 125, 2004- *Page 7 
Ohio-339, ¶ 41. However, in order to qualify for a court's deference, the agency's interpretation of its rules and regulations must be consistent with statutory law and the plain language of the ruleitself. Id. That is, an agency must follow its own rules. State ex rel.Consumers League of Ohio v. Ratchford (1982), 8 Ohio App.3d 430, 422, citing Kroger Grocery Baking Co. v. Glander (1948), 149 Ohio St. 120,126. See, also, Danis Clarkco Landfill Co. v. Clark Cty. Solid WasteMgmt. Dist. (1995), 73 Ohio St.3d 590, 603.
 {¶ 21} In reading those rules, words and phrases shall be read in context and construed according to the rules of grammar and common usage unless such words and phrases have acquired a technical or particular meaning by legislative definition or otherwise. See 1.42. See, also,State ex rel. R. Baeur Sons Roofing Siding, Inc. v. IndustrialCommn. (1948), 149 Ohio St.493, 496-497 (rules are subject to the canons of statutory construction, including the canon that words be given their plain and ordinary meaning). Common usage refers to usual, normal or customary meaning. State ex rel. Pennington v. Gundler (1996),75 Ohio St.3d 171, 173.
 {¶ 22} It is clear that the legislature permitted ODRC to adopt a rule allowing interception of all funds the inmate receives in an account, whether they are earnings or gifts. That is, R.C. 5120.133(A) provides that ODRC may apply money that belongs to a prisoner and that is in his prison account. Further, this section states that "[e]xcept as provided in rules adopted under this section, when an amount is received for the prisoner's account, the [ODRC] shall use it for the payment of the obligation and shall continue using amounts received for the account until the full amount of the obligation has been paid." R.C. 5120.133(A) (emphasis added). The next section continues that ODRC can specify what portion of the inmate's "earnings and other receipts" the inmate is permitted to retain to spend at the commissary and that shall not be used to satisfy the court obligation. R.C. 5120.11(B). Thus, the legislature clearly left it for ODRC to determine what amount and type of funds are automatically exempt.
 {¶ 23} In adopting its relevant rule, ODRC provided that all funds over $10 can be withdrawn where there are initially sufficient funds in the account to satisfy the obligation. O.A.C. 5120-5-03(D). That section does not limit the withdrawal to income *Page 8 
or earnings but applies to all funds. See id. However, where "there are insufficient funds in the account to satisfy the amount shown as due, a monthly check shall be issued * * * for the amount of monthly incomereceived into the inmate's account which exceeds ten dollars." O.A.C. 5120-5-03(E) (emphasis added). This section, indisputably applicable to petitioner's situation, specifies "monthly income received."
 {¶ 24} As can be seen, the statute and rule are not incompatible. The enabling statute granted ODRC the discretion to automatically exclude certain funds for the benefit of the inmates so that they can purchase items from the prison commissary. The rule then imposed the automatic exclusion of $10 plus any amount not falling under the definition of "monthly income received." Thus, under either party's interpretation, the rule and statute are reconcilable. We thus turn to whether the language used is plain, clear and ordinary or such to reasonable interpretation.
 {¶ 25} In the plainest sense of the words, "income received" means the receipt of money derived from capital, labor and/or services. SeeState ex rel. McDulin v. Indus. Comm. (2000), 89 Ohio St.3d 390, 391. Hence, income includes earnings from work and funds from investments. Id. This is the common use of income. Id. In the ordinary, everyday common usage and in the context herein, income or "monthly income received" does not include gifts.
 {¶ 26} This is also true in other pertinent statutes and in other areas of the law. See O.A.C. 5120-12-05(C)(3) (in discussing using prison earnings to pay for transitional control supervision); R.C. 5120. 56(C) (distinguishing funds from visitors from assets on hand and income); R.C. 3109.01(C)(7) (child support); Internal Revenue Code (income tax).
 {¶ 27} Finally, we note that the legislature's enabling statute clearly and specifically distinguished between "earnings" and "other receipts." Both can be intercepted unless a later adopted rule allows the inmate to retain a portion of his funds. See R.C. 5120.133. Here, the rule's use of "income" only allows earnings from labor or services or funds derived from capital. See O.A.C. 5120-5-03(E) (where there are initially insufficient funds to cover the amount of the judgment as in petitioner's case). That is to say, section (E) of the rule fails to use the phraseology "earnings and other receipts" or "amounts received" as did the legislature in defining the full extent of *Page 9 
ODRC discretion. Rather, the ODRC used its legislatively-granted discretion to limit garnishment withdrawals to "monthly income received" that is over $10.
 {¶ 28} Had the ODRC intended to use its discretion granted under the enabling statute to allow withdrawal of "all funds received each month [or monthly earnings and other receipts] over $10," they easily could have done so by using such quoted language. (They still can do so.) Instead, they chose to use the word income, which is most commonly and ordinarily used as a synonym for funds generated from labor, services or capital, especially in the context of finance and garnishments.
 {¶ 29} We conclude from the terminology that the ODRC did not use the full extent of its authority to attach. It is unknown whether this was an unintentional oversight or an intentional limitation (to allow the poorest of inmates, who cannot receive cash, to receive gifts just as a regular debtor could receive gifts of cash). See State v. Peacock, 11th Dist. No. 2002-L-115, 2003-Ohio-6772, ¶ 54 (procedures to parallel collection from non-inmate debtor while allowing for particular issues of inmates). See, also, R.C. 2921.36(D) (no cash carried onto grounds of detention facility); O.A.C. 5120-5-02(A)(2),(3),(C) (only money orders or the like are the source of funds approved for deposit; cash and personal checks are unapproved funds for deposit into an inmate account). Additionally, the true intent is irrelevant since the phrase "monthly income received" is found to be plain, clear and unambiguous.
 {¶ 30} In conclusion, the use of the phrase "monthly income received" precludes attachment of non-income such as gifts. As such, appellant has established as a matter of law that he has a clear legal right to retain his non-income receipts and the warden (through her designee) has a clear legal duty to refrain from attaching funds that are not income and to apply the rule as written, not as interpreted in a policy statement. Until the language of the rule is changed to include all receipts, we are bound by the plain language utilized therein.
 ADEQUATE REMEDY AT LAW {¶ 31} Respondent also argues in the alternative that petitioner has an adequate remedy at law and is therefore not entitled to mandamus. Respondent claims that petitioner had the opportunity to file a timely objection under the institutional grievance process for court collections set forth in O.A.C. 5120-5-03(C). *Page 10 
Specifically, respondent urges that petitioner should have objected to the notice sent to him on July 20, 2006. Respondent attached the notice, from the warden's collection designee, which disclosed that an enclosed copy of the court judgment obliged petitioner to pay $1,956.89. The notice advises that the designee is required to place a hold on petitioner's account for the amount of the obligation. The notice states:
 {¶ 32} "R.C. section 2329.66 provides that certain funds cannot be taken from you to pay a debt. That law exempts from execution your interest in or right to specified property as described in R.C. section2329.66. The substance of this statutory provision is attached to this notice. Other laws of Ohio and the United States may provide additional defenses challenging the judgment itself.
 {¶ 33} "If you believe that some or all of the money in your account should not be withdrawn due to an exemption under R.C. section 2329.66
or because of a defense(s) in other provisions of law, then you may explain such belief by filling out the enclosed [form within fourteen days]. * * * If your written explanation is not delivered to my office by (08/03/2006) then you waive your privilege to object or assert reasons why some or all of your account money should not be used for payment of the above-stated debt."
 {¶ 34} "* * *
 {¶ 35} "If you dispute the validity of the enclosed judgment, it is your responsibility to have the judgment order stayed, vacated or modified by the appropriate court. My office will determine whether you are entitled to one of the exemptions under R.C. section 2329.66. While we will attempt to consider defenses, we may be unable to determine the validity of defenses attacking the judgment itself. * * *."
 {¶ 36} Respondent believes that by failing to timely utilize the objection process set forth in the notice and in O.A.C. 5120-5-03(C), petitioner waived any objection and bypassed an adequate remedy at law by failing to exhaust his administrative remedies as required by R.C.2969.26. This statute requires inmates suing government officials on matters that are subject to the institutional grievance system to file with the court both an affidavit (stating that a grievance was filed and stating the date of the decision on the objection) and a copy of any written decision. R.C. 2969.26(A)(1),(2). *Page 11 
 {¶ 37} As aforementioned, petitioner responds that he could not have utilized the grievance process in O.A.C. 5120-5-03(C) at that time since he was unaware that the warden would be misinterpreting the relevant rule.
 {¶ 38} The genesis of the notice to the obligor is O.A.C. 5120-5-03(C). This section requires the notice to adequately inform the inmate of the right to claim exemptions under R.C. 2329.66 and the right to raise a defense. This derives from R.C. 5120.133(B), which states that the rules shall not permit the disbursement of funds that are exempt under R.C. 2329.66 or another provision of law.
 {¶ 39} As quoted above, the notice respondent proffers as the one provided to petitioner basically states that petitioner can only object if he believes that an exemption in R.C. 2329.66 applies or if other state or federal laws provide a defense challenging the judgment itself.However, petitioner is not urging that an exemption exists, and he isnot urging that other laws provide a defense to the judgmentitself. Rather, he is claiming that the rule itself exempts non-income.
 {¶ 40} There is no indication in the notice provided to petitioner on July 20, 2006 that the warden's designee would be interpreting O.A.C. 5120-5-03 so that "monthly income received" means funds other than earnings. It was not until sometime after the designee intercepted one of petitioner's money orders that he would have made inquiry and been informed that respondent's interpretation of the rule permits attachment of money that is not earnings. Thus, petitioner was not required to voice his objection within fourteen days of the July 2006 notice. The objection procedure in the warden's notice did not provide petitioner with an adequate remedy of law to challenge the interpretation of the rule.
 {¶ 41} In general, the inmate grievance procedure of O.A.C. 5120-9-31 is an adequate remedy at law for general complaints regarding any aspect of institutional life. State ex rel. Humphrey v. Jago (1996),74 Ohio St.3d 675, 676. However, respondent does not cite O.A.C. 5120-9-31 or contend that it is applicable herein. Rather, respondent relies solely on the specific grievance procedure of O.A.C. 5120-5-03(C) and the failure to object to the July 2006 notice. We shall not construct arguments for the respondent, especially where the respondent chooses to urge the applicability of a specific grievance procedure while ignoring the well-known general *Page 12 
grievance procedure. See Jago, 74 Ohio St.3d at 676 (distinguishing a prior Supreme Court case, State ex rel. Wiggins v. Barnes (1991),57 Ohio St.3d 45, which granted mandamus to inmates by noting that no argument was raised in that case as to the availability of O.A.C. 5120-9-31 as an adequate legal remedy).
 {¶ 42} Petitioner had been given a specific procedure derived from O.A.C. 5120-5-03(C) and was expressly warned that he "waives [his] privilege to object or assert reasons why some or all of [his] account money should not be used" if he fails to deliver an objection by August 3, 2006. When he finally realized the extent of the attachment which did not violate the rule until September 2006, it was too late to objectaccording to the warden's own notice.
 {¶ 43} In conclusion, petitioner was advised that he must object within fourteen days of the notice received in July 2006. However, he was unaware that he had a reason to object as the relevant administrative rule guiding the warden's attachment used the phrase "monthly income received" and it was unknown to appellant at the time of the notice that this phrase would be misinterpreted as including non-income.
 {¶ 44} For all of the foregoing reasons, petitioner established a clear legal right, a corresponding clear legal duty and the lack of an adequate remedy at law. As such, the writ is granted. By way of a remedy (besides the prohibition on attaching future non-income receipts), the warden shall exempt petitioner's monthly income from future attachments until the amount of non-income wrongly attached is repaid to him. Costs are assessed against respondent. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
 VUKOVICH, J., WAITE, J., DeGENARO, P.J., concurs. *Page 1